ALISON E. HUTCHINSON et al., appellants,

v.

BRAMHALL, DEANE & Co., respondents.

1. The fourteenth section of the act concerning conveyances, requiring deeds or conveyances of lands, tenements or hereditaments to be recorded, does not apply to leases for years, nor does the mortgagee registry act apply to mortgages of such leasehold estates.

2. If a judgment creditor releases his judgment to enable the judgment debtor to borrow money on mortgage from A, and A loans the money, and takes a mortgage to secure it, the judgment creditor is chargeable with notice of such mortgage, and he cannot set up a judgment recovered after the delivery of such mortgage to A, and displace it because the mortgage to A is not recorded before the entry of such judgment.

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Deane* v. *Hutchinson, 13 Stew. Eq. 83.*

*Mr. Acton C. Hartshorne,* for appellants.

This suit was originally brought by Royal E. Deane and George G. Brooks, partners &c., for a partition of a leasehold interest, but during its pendency the estate sought to be partitioned was sold at sheriff's sale, under a judgment on a mechanics' lien paramount to the rights of any of the parties to this suit. After the sale, A. E. Hutchinson, appellant, filed his answer, and asked the same benefit of his defence as if he had demurred.

Subsequent to this sale, the complainants filed a supplemental bill, praying the same relief as to the surplus realized at the sheriff's sale as they had in their original bill to the leasehold interest described therein.

The defendant Charles H. C. Beakes was not made a party to the original bill, but was brought in by the supplemental bill, and made a party defendant.

The defendant Alison E. Hutchinson gave notice to dismiss both the original and supplemental bill, for want of equity.

The motion to dismiss was refused, and testimony was taken under the bill and answers, and the chancellor thereupon decreed that the sheriff pay, out of the surplus moneys remaining in his hands, amounting to $1,258.67, to the defendant Charles H. C. Beakes, the amount due on his judgment, together with his costs of this suit, and that he pay the balance of such surplus moneys to the defendant John B. Hutchinson.

From this decree the defendants Alison E. Hutchinson and Sarah C. Hutchinson have appealed.

The appellants did not ask for affirmative relief, neither did the defendant Charles H. C. Beakes ask for affirmative relief against the appellants, or either of them.

The answer of Beakes is only an answer to the bill of complaint. There is no cross-bill or answer in the nature thereof to the answer of the appellant Alison E. Hutchinson, and no affirmative relief against him properly raised in the pleadings, and not being within the issue the bill should have been dismissed. *Brinkerhoff* v. *Franklin, 6 C. E. Gr. 334, 337 ; Hoff* v. *Burd, 2 C. E. Gr. 201 ; Shannon* v. *Marselis, Sax. 413.*

The chattel mortgage made by McChesney & Hutchinson to Alison E. Hutchinson, June 16th, 1882, covers only the building.

This building is a personal chattel. It was put upon the property by the tenants with the consent of the landlord (see lease, James A. Bradley to McChesney & Hutchinson), and is removable at any time before the expiration of the lease. A recent case is that of *Ham* v. *Kendall, 111 Mass. 297 ;* see *Taylor* v. *Townsend, 8 Mass. 416.* The intention of the parties must govern. *Brearly* v. *Cox, 4 Zab. 289 ; Blancke* v. *Rogers, 11 C. E. Gr. 563,* and numerous cases cited ; *Vorhis* v. *McGinness, 48 N. Y. 278 ; Pope* v. *Skinkle, 16 Vr. 39,* and cases therein cited ; *Wood's Landlord and Tenant* §§ *523, 528, 529.*

A question akin to the present was considered in *Pope* v. *Skinkle, 16 Vr. 41.*

Many cases indicate the propriety of such an inference. Thus,

in *Doty* v. *Gorham, 5 Pick. 487*, the permission of the land-owner to the erection of the structure was all that appeared to bind him, and the court held that the jury rightly found that the builder might remove the building as a chattel. In *Ham* v. *Kendall, 111 Mass. 297*, the land-owner agreed that another might put an ice-house on his land, and that it might remain there five years; there was no agreement that it should be a chattel or be removable by the builder, but the court held that it was the builder's chattel, and he might remove it during the five years. In *Osgood* v. *Howard, 6 Me. 452*, a tenant at will had erected a dwelling-house and other buildings on the land with the express consent of the landlord; after his death the tenant's administrator sold them to a stranger; the court held that the purchaser could maintain trover for them against the land-owner, putting its decision expressly on the consent, and not on the fact of tenancy. In *Dame* v. *Dame, 38 N. H. 429*, the court says that the express assent and permission of the land-owner to the erection by another of a building on the land, almost necessarily implies an understanding that the builder may remove the building, and creates a tenancy at will in him. Numerous cases are there referred to as illustrative of the doctrine. See, also, *Whiting* v. *Brastow, 4 Pick. 310*.

Now this building, being a chattel in contemplation of all the parties in interest, was properly the subject of chattel mortgages. It was covered by such mortgages, which were duly recorded in the clerk's office at Freehold, the last covering leasehold interest. The record (taken in connection with the record of the lease) instantly became notice to all persons, and the mortgages were " valid against the mortgagor and his creditors, and against subsequent purchasers and mortgagees." *P. L. of 1880 p. 267*.

*Mr. James Steen*, for Bramhall, Deane & Co., respondents.

As to lien of the defendant (appellant) A. E. Hutchinson's chattel mortgage on the leasehold, the question is settled. *1 Jones on Mort. (3d ed.) § 471; Jones on Chat. Mort. 258;* see *Decker* v. *Clarke, 26 N. J. Eq. 163; Spielmann* v. *Kliest, 9 Stew. Eq. 199*.

In the second place, if this chattel real was partnership property, as alleged (which we deny), W. W. McChesney and John B. Hutchinson held it in joint tenancy, but it was not "so expressly set forth" in the lease. See *Rev. p. 167 § 78.* But where deeded as here, "the title at law rests in the partners individually." *Ensign* v. *Briggs, 6 Gray 329.* And "a purchaser without notice would not be bound." *Tiff. & B. Trusts 98.*

Before judgment and levy, creditors of a firm have no lien. *Greenwood* v. *Brodhead, 8 Barb. 596; Freeman* v. *Finnall, 1 S. & M. Ch. 627; 9 N. J. Eq. 466; 17 N. J. Eq. 262; Robb* v. *Stevens, 1 Clarke 198.*

Not only is there "no lien" before execution, but there is no equity before execution is issued. *Story on Part. (7th ed.)* §§ *358, 359.*

Note that the levy attempted April 5th, 1884, under the Beakes judgment was nugatory, no title in either defendant. *Belford* v. *Crane, 1 C. E. Gr. 265.*

Claims of partnership creditors cannot be preferred to those of the individual partners, unless there is bankruptcy or insolvency of the firm. *Washburn* v. *Bank, 19 Vt. 278; 7 Iowa 183; 13 Md. 102; 124 Mass. 1; 26 Ga. 568.*

And a *bona fide* assignment of the rights and interest of a partner in the partnership property would defeat this so-called lien of the partnership creditors. *10 Ves. 347; 13 Ala. 846; 35 Iowa 323; 8 Ired. Eq. 21.*

Nor is the effect of a conversion of the joint into a separate estate "altered by the circumstance that at the time it took place the partners knew that the firm was insolvent." *2 Coll. on Part. (6th ed.) 1447 § 916; 15 Gratt. 400; Willard's Eq. Jur. 719; Story on Part. § 360.*

And then "it is only through the lien of the partners." *Sanderson* v. *Stockdale, 11 Md. 573; Holloway* v. *Turner, 61 Md. 217; Mayer* v. *Clarke, 40 Ala. 259.*

"Partnership creditors have a claim to priority of payment out of the joint funds so long as they continue to be joint, but no specific lien, legal or equitable, upon them *a priori,* the

only lien belonging to the partners." *Allen* v. *Centre Valley Co., 21 Conn. 135.*

But, "a partner by his sale, loses all equitable lien on partnership property." *Vosper* v. *Kramer, 4 Stew. Eq. 420.*

And so "upon the dissolution of a partnership, the firm property may, for a valuable consideration, be sold and transferred to one of the partners, and when thus disposed of, it is not followed by, nor subject to, the claim of the partnership creditors, as a fund out of which they are to be paid, and this rule prevails, even though the partner so acquiring the property assumes the payment of the partnership debts." *City of Maquoketa* v. *Willey, 35 Iowa 323 ; Coover's Appeal, 29 Pa. St. 9.*

The doctrine that the separate debt of one partner shall not be paid out of the partnership estate until all the debts of the firm are discharged, is correct, but it does not apply until the partners cease to have a legal right to dispose of their property as they please. It is applicable only when principles of equity are brought to interfere in the distribution of the partnership property among the creditors. Those equitable principles operate on the property remaining in the possession of the parties, and embrace all that has been fraudulently disposed of. *McDonald* v. *Beach, 2 Blackf. 55 ;* approved, *2 C. E. Gr. 262 ; Case* v. *Beauregard, 99 U. S. 119.*

McChesney's interest could be levied on. *Hill* v. *Beach, 1 Beas. 31.*

At the time of complainant's levy and sale, no one had any lien or equity upon the property, unless it was John B. Hutchinson, and he did not assert any. *Young* v. *Frier, 1 Stock. 465 ; Mittnight* v. *Smith, 2 C. E. Gr. 259.*

The rule is one "which prevails in courts of equity in the distribution of equitable assets only. Those courts have never assumed to exercise the power of setting aside or in any way interfering with an absolute right of priority obtained at law. In regard to all such cases, the rule is *equitas sequitur legem.*" *Meech* v. *Allen, 17 N. Y. 300, 302 ; 1 Story's Eq. Jur.* § *553 ; National Bank* v. *Sprague, 5 C. E. Gr. 30 ; Howell* v. *Teel, 2 Stew. Eq. 302.*

And so, too, " the principle that the separate creditors of each partner are entitled to be first paid out of the separate estate of their debtor, before the partnership creditors can claim anything, cannot apply to creditors who have secured their debts by judgment and execution liens." *Wisham & Kay* v. *Lippincott, 1 Stock. 353.*

" An execution against a firm has the preference over one against an individual partner, but when property is sold on an execution against a partner, though after the delivery of the execution against both partners, it is a valid sale, if sufficient time had not elapsed for an advertisement and sale under the other execution." *Fenton* v. *Folger, 21 Wend. 676.*

We contend for what the American annotator, in *Coll. on Part. (6th ed.) 1150,* says " would seem to be the true rule," as established in *Sanders* v. *Young, 31 Miss. 112,* where it was held that " the legal interest of a partner may be levied on and taken possession of by the sheriff on execution and attachment, which is the partner's proportionate share of the partnership property, and not his share of what remains after the firm debts are paid, but that the solvent partners may, while the sheriff is proceeding, file their bill in equity, and upon proper showing, limit the creditor to the actual interest of such partner after a settlement of the partnership debts. See, also, *Coll. 1148; 8 Clarke 13; 18 B. Mon. 463; 12 Cal. 199.*

There is no evidence, in this case, of fraudulent conveyance, and before the recovery of the Beakes judgment, or the interference of the court of equity, the chattel real had passed out of the possession of the alleged firm. Neither partner has asked to have the property applied as firm property. And by decree *pro confesso* against both, they are concluded upon the question of its being firm property at all.

*Messrs. Babbitt & Lawrence,* for respondents, Charles H. C. Beakes et al.

I. The court was right in making a decree determining the interests of the parties before it in the fund in the hands of the sheriff.

In a court of equity a decree may be made determining the rights of codefendants in a controversy between themselves, in which the complainant has no interest. *Vanderveer* v. *Holcomb, 2 C. E. Gr. 547; Shannon* v. *Marselis, Sax. 413.*

The supplemental bill clearly brought these questions before the court, and all the parties were before the court. If the bill should be dismissed, the matters settled by this decree would have to be litigated anew. As was said by Chief-Justice Ewing, sitting for the chancellor, in *Decker* v. *Caskey, Sax. 427*, " It is the desire as well as the duty of this court, never to do justice by halves; never merely to beget business for another court, and never, when a case is fairly within its jurisdiction, to leave open the door for litigation further or in any other place, if it can possibly be here closed."

Putting the case in the strongest possible light for the benefit of the appellants—leaving aside the inconsistent positions assumed by them, and leaving aside the issues raised by the supplemental bill—their claim is distinctly denied by Chancellor Green in the case of *Blair* v. *Porter, 2 Beas. 267*. In that case the chancellor was of the opinion that in strictness the bill should be dismissed; but he refused to do so, saying: " The fund is in court and under its control. All the necessary parties are before the court. Their rights may be definitely settled and fully protected by a final decree. The effect of dismissing the bill would be to leave the parties, after five years of fruitless controversy, with nothing settled but liability for costs, to commence litigation anew."

II. The court was right in decreeing that the money in the hands of the sheriff should be applied to the payment of the judgment of respondent Charles H. C. Beakes.

*First.* The building erected by the partners was incorporated into and became part of the land. *Ewell on Fixtures p. 89; Linnahan* v. *Barr, 41 Conn. 471.*

*Second.* The building being a part of the land, the chattel mortgage to Alison E. Hutchinson for $2,000 constitutes no lien whatever.

A chattel mortgage on realty is no lien, even as against persons

having full notice of its existence. *Richardson* v. *Copeland, 6 Gray 536.*

Chancellor Runyon, in *Decker* v. *Clarke, 11 C. E. Gr. 163,* held that the chattel mortgage act, which embraces " every chattel mortgage," refers only to mortgages of chattels personal, and does not include a mortgage of a leasehold interest in lands. See, also, *Spielmann* v. *Kliest, 9 Stew. Eq. 199.* The statute concerning leases for more than two years *(Rev. p. 157)* indicates the manner in which leasehold interests are to be encumbered. If this should be considered a mortgage of the interests of the lessees in that building, what would be the result? Suppose the mortgagee foreclosed his mortgage, what does the purchaser at the sale acquire? He is unable to take the building away, because it is part of the land; he is unable to use it in any way, because as soon as he enters it he becomes a trespasser on the land underneath.

*Third.* If the building is a chattel, and the mortgage of the appellant Alison E. Hutchinson a valid lien upon it, he certainly has no interest in the surplus money in the hands of the sheriff. That money was raised at a sale under an execution commanding the sheriff to make sale of certain lands. He had no authority to sell anything else, and the money in his hands must be regarded as the proceeds of the sale of realty. *Arnett* v. *Finney, 2 Stew. Eq. 309.* A chattel mortgagee can have no interest in such proceeds.

*Fourth.* The appellant Sarah C. Hutchinson has no interest in the fund in the hands of the sheriff.

The opinion of the court was delivered by

Van Syckel, J.

On the 21st day of February, 1882, James A. Bradley executed to William W. McChesney and John B. Hutchinson a lease for a lot of land in Asbury Park, for the term of twenty years. There was a covenant in the lease that the lessees should, within four months from the date thereof, erect on the leased

premises a building thirty feet by sixty feet, and three stories high. The building was erected within the limited time.

At the time the lease was made, the said McChesney and Hutchinson were partners in business, and continued thereafter to carry on in said building their partnership business, under the firm name of McChesney & Hutchinson.

On the 7th of May, 1883, Bramhall, Deane & Co. recovered a judgment in the Monmouth circuit court against the said William W. McChesney, and by virtue of an execution issued upon said judgment the undivided half interest of said McChesney in the said leasehold and building was sold by the sheriff of Monmouth county to said Bramhall, Deane & Co., December 7th, 1883.

June 16th, 1882, the lessees executed a mortgage on the said building to Alison E. Hutchinson, which was recorded as a chattel mortgage.

December 23d, 1882, the lessees executed a mortgage on the said building and the land leased, to Lewis P. Thompson, which was also recorded as a chattel mortgage.

January 2d, 1884, C. H. C. Beakes recovered a judgment against McChesney & Hutchinson for a partnership debt.

Buchanan & Co. furnished the lumber for the erection of said building, and filed a lien claim therefor against said McChesney & Hutchinson, and on the 8th day of October, 1883, they recovered a general and special judgment thereon, and by virtue thereof the said building and the estate of said McChesney & Hutchinson in said land were sold and conveyed by the sheriff of Monmouth county to Alison E. Hutchinson, on the 28th day of April, 1884.

On the 19th of January, 1884, and before the last-mentioned conveyance, the said Bramhall, Deane & Co. filed their bill in the court of chancery for a partition of the said tract of leased land.

The sale under the lien judgment produced $1,258.67 in excess of the sum due on the lien claim.

The lien judgment being paramount to the title of the complainants in the equity suit, the said complainants filed a supplemental bill, July 17th, 1884, praying that the said surplus might

be paid into the court of chancery, and distributed under the direction of that court.

The court of chancery properly held that, in the application of the said fund, the creditors of the partnership were entitled to priority in payment over the complainants, who were creditors of McChesney, one member of the firm.

The contest in the court of chancery was held to be between C. H. C. Beakes, the judgment creditor of the firm, and the chattel mortgage creditors of the firm, and a decree was rendered in that court giving the judgment creditor the preference.

From that decree, Alison E. Hutchinson, who holds the prior mortgage, has appealed.

The lien claim of Buchanan & Co. was filed against the lessees only; Bradley, the lessor and owner of the fee, was not a party to it.

Under the fourth section of the lien law, the building having been erected by the written consent of the owner of the fee, his estate in the land might have been sold to satisfy the lien claim. But the lien claim having been filed against the estate of the lessees only, the sale under the special judgment passed only their interest in the land and building to Alison E. Hutchinson.

The surplus money in court to be distributed, represents only the estate of the lessees.

The lien of the judgments and mortgages, which encumbered the estate of the lessees, is transferred to this surplus fund.

It is immaterial whether the building can be removed by the lessees or those who own their estate, so far as these encumbrances are concerned.

That is a question which will arise between A. E. Hutchinson, as purchaser under the lien judgment sale, and Bradley, the lessor, when the lease expires, and not between A. E. Hutchinson, as mortgagee, and Bradley, nor between judgment and mortgage creditors.

This, however, seems to be clear : that the building which the lessees engaged to erect, and which they did erect, in compliance with their covenant in the lease, must be left upon the premises during the term of the lease, for it would be highly unreasonable

to construe the lease in such a way as to permit the lessees to erect the building one day and remove it the next. That could not have been the intention of the parties.

The mortgage of Alison E. Hutchinson is on the said building (known as McChesney & Hutchinson's Ice Cream Manufactory), situate at Asbury Park, New Jersey, on the northwest corner of Main street and Summerfield avenue.

The mortgage of Lewis P. Thompson is on the said ice cream manufactory, with the leasehold interest of the said McChesney & Hutchinson, for the ground on which it is located. In legal effect these mortgages do not differ; they both cover the interest of McChesney & Hutchinson in the said building and land. The surplus in court stands in the place of such leasehold interest as the lessees had. The extent of that interest is a question to be settled between Bradley and the purchaser under the lien claim, and it cannot affect the distribution of the fund.

The simple question here is whether a mortgage on a leasehold interest must be recorded as a real estate mortgage.

A leasehold is a chattel real, and goes to the executor or administrator. *1 Greenl. Cruise tit. VIII. ch. 2 § 19.*

All leases and terms of lands, tenements and hereditaments of a chattel quality, are chattels real, and will go to the executor or administrator; but he has no interest in the freehold terms or leases.

The general rule for distinguishing these two kinds is that all interests for a shorter period than a life, or more properly speaking, all interests for a definite space of time, measured by years, months or days, are deemed chattel interests; in other words, testamentary and of the nature, for the purposes of succession, of other chattels or personal property. *1 Wms. on Exrs. 562; 2 Bl. Com. 386.*

A lease for nine hundred and ninety-nine years is a chattel, which the administrator may dispose of in the same manner as he may of the other personal property of his intestate. He needs no order from the court, as in the case of selling real estate to pay debts. *Ex parte Gay, 5 Mass. 419.*

In *Decker* v. *Clarke, 11 C. E. Gr. 163*, mortgages of chattels

real were held not to be within the provisions of the act con-
cerning chattel mortgages.   *Nix. Dig. 613.*

The like view was taken by the New York court of appeals
in *Booth* v. *Kehoe, 71 N. Y. 341.*

The Hutchinson and Thompson mortgages having been filed
as chattel mortgages, it is unnecessary to discuss that question.

These mortgages, being prior in time to the Beakes judgment,
must prevail over it, unless it was essential, as is contended, to
record them as real estate mortgages.

*Decker* v. *Clarke, 11 C. E. Gr. 163,* and *Spielmann* v. *Kliest,
9 Stew. Eq. 199,* adopt the view of Chancellor Kent, in *Johnson*
v. *Stagg, 2 Johns. 510,* that the mortgage of a leasehold for years
is within the provision of the registry act requiring mortgages of
lands to be recorded.

It is conceded by the learned jurist who decided these cases
that the ancient rule of law was that the words "lands, tenements
and hereditaments" comprehend only freehold estates, and not
leases for years, and that a lease for years confers no estate in the
lands demised by it.

We cannot disregard the established technical meaning at com-
mon law of words which have been woven into our system of
conveyancing, and have become part of it, without introducing
confusion and uncertainty in respect to land titles.

The fourteenth section of our act concerning conveyances
(*Rev. p. 155*) provides that every deed or conveyance of or for any
lands, tenements or hereditaments to any purchaser of the same
shall be recorded.

To bring a writing within the descriptive terms of the statute,
to entitle it to be registered, it must be a deed or conveyance of
lands, tenements or hereditaments to a purchaser of the same.

The language of the statute implies that it must be such an
estate in lands as can be conveyed only by writing sealed and
delivered.

At common law, estates in fee, for life or for years might have
been created by deed and livery of seizin, or by livery of seizin
only; and leases for years might have been made by parol
merely, without livery of seizin.   Contracts were also divided

into specialties, and agreements by parol—if written and not under seal, they were parol agreements; a lease for years, in writing, not under seal, was a parol lease.

Thus, says Chief-Justice Hornblower, in *Mayberry* v. *Johnson, 3 Gr. 116,* stood the law of conveyancing and of contracts when the *29 Car. II. c. 3* was passed. He declared the effect of that statute to be that estates of freehold could be created and conveyed only by deed, while leases for any term of years might be by writing not under seal. In the language of the statute, they could be made by parol, put in writing, and were still, upon common law principles, parol contracts.

Such leases are, in legal contemplation, neither deeds nor conveyances, and have never been so denominated. They are not within the fourteenth section. The framer of that statute understood that " deeds or conveyances " excluded writings not under seal, as appears by the provision that the deed or conveyance shall be recorded within fifteen days of the time of signing, sealing and delivering the same.

A lease for years under seal is undoubtedly a deed, but is it, within the meaning of the fourteenth section, a deed or conveyance of lands, tenements or hereditaments?

If so, we have this peculiar condition of the law: that a lease under seal for a term of years must be recorded under penalty of losing its priority, while an equally effective lease for a term of years, in writing, not under seal, cannot be recorded.

Thereby the sanction of the statute can be evaded by simply omitting to put a seal upon the lease.

It cannot be conceived that the framer of the fourteenth section intended to leave the law in that situation.

The act of 1872 imposes no penalty ; it was intended to give the lessee the advantage to be derived from registry, if his lease was sealed and duly acknowledged, but to leave him as at common law, if he did not record his lease, or if he accepted a lease not under seal. It was framed for the benefit of the lessee, and not with a view to protect creditors.

It will also be observed that the act of 1872 provides that all leases under seal, except leases for less than two years, may be

Hutchinson *v.* Bramhall.

recorded, while, if leases for years are within the terms of the fourteenth section, leases for less than two years are not excepted from its operation. It must be inferred that the draftsman of the statute understood the term "deed or conveyance of lands, tenements and hereditaments" to mean what it signified under the old rule of the common law, viz., a deed or conveyance of a freehold estate, such estate as must be conveyed by deed, and not a lease for years, which may be passed by writing not under seal.

That such has been the general understanding of the legal profession is evinced by the fact that up to the time of the passage of the act of 1872, the principal recording offices in this state will be searched in vain to find the existence of an established practice of recording leases for years as conveyances of lands. It was not deemed necessary to record a lease for years, in order to preserve the rights of the lessee, or to protect a purchaser of the freehold, because the lessee, or his agent or asignee was usually in possession, and that possession put the subsequent purchaser on inquiry. *Van Keuren* v. *Central Railroad, 9 Vr. 165.*

If the fourteenth section comprehends leases for years, then it may, with much force, be argued that by a reasonable interpretation of the act of 1872, that section is repealed, so far as relates to leases.

In any other view, what beneficial effect can be given to the later statute? Of what value is the supplement of 1872, or what purpose can the option therein given to record leases or not, serve, if the penalty provided in the fourteenth section for not recording still pertains? That the act of 1872 leaves it to the option of the lessee whether he will register his lease, must be conceded, for registry is a creature of statute law, and no forfeiture can arise in respect to it except that which the statute itself prescribes. Where it is not prescribed, it does not exist.

Will it be presumed that the legislature would enact a law that the lessee might, at his option, record his lease, if it was intended that for his failure to do so he should be subject to the penalty denounced in the earlier act? The lessee would have been precisely in that position without the law of 1872. If a

25

statute requires an act to be done, and imposes a penalty for the omission to do it, and a subsequent statute provides that the same act may be done or not, at the option of the party before required to do it, does not the implication arise that the penalty is removed? It is not necessary, however, to decide this question now.

The learned jurists who revised the act respecting conveyances, retaining in it the fourteenth section as it before existed, and incorporating in it the provisions of the act of 1872, manifestly conceived that the legal phraseology used in the act had been adopted with the signification given to it in the old common law. This is indicated by the fact that the twenty-fifth section of the Revision provides that the clerk shall record, in well-bound books, " all deeds and conveyances of lands, tenements and hereditaments" and also " all other instruments which are by the act therein directed to be recorded."

The " other instruments," within the contemplation of the revisors, must have been leases for years, and assignments of such leases.

This is shown by reference to the ninth section of the act respecting conveyances in Nixon's Digest, edition of 1868, which does not contain the words " all other instruments."

Those words were presumably added because the revisors did not understand that deeds or conveyances of lands, tenements and hereditaments, included leases for years.

In my judgment that is the true interpretation of the language of the fourteenth section. It does not authorize or require leases for years to be put on record.

The language of the mortgage act is substantially the same as that in relation to deeds, providing for the registry of all mortgages and defeasible deeds in the nature of mortgages of lands, tenements and hereditaments. If not necessary to record the lease itself, it cannot be necessary to record a defeasible conveyance of the lease. There would be nothing upon the record to enable parties interested to trace the title, and therefore the registry of such mortgage would not be notice. *Losey* v. *Simpson, 3 Stock. 246.*

My conclusion, therefore, is that the priority of the mortgages in question is not lost by the omission to record them as real estate mortgages.

There is also another ground upon which the Hutchinson mortgage is entitled to be preferred.

The evidence shows that Beakes held a judgment against the partners, which was recovered prior to the execution of that mortgage.

McChesney, one of the partners, told Beakes that the firm wished to borrow money from Hutchinson, and secure it by mortgage on the building, if Beakes would release the building from the lien of that judgment, so that the mortgage would not be subject to it. To that Beakes assented, and on the 15th of June, 1882, executed such release, and the mortgage was thereupon executed to Hutchinson before the rendition of the judgment now held by Beakes.

By this evidence, Beakes is chargeable with knowledge of the Hutchinson mortgage before he recovered his judgment, and he cannot postpone the mortgage for want of registration.

The case of *Morris* v. *White, 9 Stew. Eq. 324,* is not in conflict with this conclusion. There this court laid down the rule that " the fact that a judgment creditor knew that a mortgage was intended and being prepared, did not deprive him of the right which a creditor has to secure a just debt by greater vigilance and promptness." A creditor is under no obligation, legal or equitable, to permit another to gain a position superior to his own. But in that case, although the White mortgage was not recorded until two days after the entry of the Morris judgment, the judgment creditor was charged with notice of it, and postponed to it upon far less evidence than is submitted on behalf of the mortgagee in this case. That decree rests upon the finding that the mortgage was actually executed before the judgment was entered.

Here the judgment creditor not only knew that the mortgage was to be given, but he released an earlier judgment to enable the mortgage to occupy the first place, and the mortgage was executed and delivered long before the recovery of the judgment

which Beakes now sets up to displace it. Beakes is chargeable with notice, not only that Hutchinson intended to take a mortgage, but that he actually had taken it before his judgment was obtained, and any necessity which might otherwise have existed to register the mortgage was thereby dispensed with. In my opinion, the decree below should be reversed, and the entire fund in court appropriated to the payment of the Alison E. Hutchinson mortgage. The fund being insufficient to satisfy that mortgage, neither the complainant nor Beakes should be allowed costs in this court or in the court below.

*Decree unanimously reversed.*