## JOHN FIRTH

### v.

### FRANCIS ROWE.

1. A lessee for a term of years, at a monthly rent, erected buildings upon the premises, and then, for a present consideration, underlet them for the balance of his term, reserving the same rent as that reserved in his lease, and took back a chattel mortgage, duly recorded as such, from the subtenant, upon the lease and buildings, to secure the consideration of the sublease. The subtenant surrendered the term to the principal landlord.—*Held*, that the sublease amounted to an assignment of the original lease, and that the surrender was void as to the holder of the mortgage.

2. The buildings were erected for the purpose of a livery stable, by express permission in the original lease. *Semble* that they were removable as trade fixtures.

---

Order to show cause why injunction should not issue.

The complainant, being the owner of a piece of vacant land in East Orange, executed a lease of it on the 23d day of January, 1891, to W. J. Morfilt, for the term of five years from the 1st day of February then next, at an annual rent of $180, with privilege to the lessee of purchasing the same at $2,000. The instrument executed by the parties is composed partly of print and partly of writing, and contained this clause:

"And the said party of the second part do further promise and agree that they will not relet or underlet the whole or any part of said premises, nor assign this lease, nor use or permit any part thereof to be used for any other purpose *than building such buildings that are needed in carrying on the livery stable business,* without the written consent of the said party of the first part."

So much of the usual printed covenant as provided for keeping the premises in repair, appears to have been erased. There are several other erasures in the lease which are not noted in the attestation clause. This lease was acknowledged on the 8th of January, 1892, nearly a year after its date, and recorded on the 22d of January, 1892, in the proper book of deeds for Essex county.

So far as appears, this lease was not executed in duplicate. It is signed by both parties.

On the 13th of April, 1891, the complainant executed another lease of the same premises to Morfilt for the term of five years from the 1st of February, 1891, with the same privilege of purchasing for $2,000, and at the same rent, and with the same provision with regard to "building such buildings that are needed in carrying on the livery stable business." In that document the covenant to keep the premises *in as good repair as the same shall be at the commencement of the term* is not erased. A clause is added giving the lessee the privilege of subletting the premises. That lease is not recorded. It was executed in duplicate.

By writing dated on the same day, Morfilt, the lessee, sublet the premises to a firm called Dietrich & Losey, for the term of four years and ten months from the 1st of April, 1891, at the same yearly rent, with the same privileges.

Between the giving of the lease from the complainant to Morfilt and the sublease from Morfilt to Dietrich & Losey, Morfilt had built upon the premises a stable and carriage-house proper for carrying on the business of keeping a livery stable. But on the 11th of April, 1891, two days before the date of the lease from Morfilt to Dietrich & Losey, Dietrich & Losey executed to Morfilt a chattel mortgage to secure $2,250, the schedule of which contains, among other things, the following:

"Stable and carriage-house erected by said Morfilt on the premises in the rear of No. 108 Main street, East Orange, leased by him of John Firth for the term of five years. * * * Lease given by John Firth to said William J. Morfilt for five years, of the above-mentioned premises in the rear of No. 108 Main street, East Orange; also the good-will and trade of the moving, express and livery business."

That document was executed and acknowledged on the 11th of April, 1891, and recorded on the 20th of April, 1891, in the proper book of chattel mortgages in Essex county.

On the 11th of April, 1892, Morfilt assigned this mortgage to the defendant, Francis Rowe.

On the same 11th day of April, 1892, Morfilt underlet the premises to Rowe by writing endorsed on one copy of the lease of the 13th of April, 1891, from Firth to him.

Losey retired from the business, and Dietrich became the sole tenant in possession of the premises under the sublease from Morfilt to Dietrich & Losey. On the 17th of June, 1893, Dietrich, by writing under seal, released the complainant from the right and option of purchase contained in the lease. Dietrich also surrendered the lease to Firth, and took a new lease from him of the premises contained in the first lease and an additional lot adjoining.

In July, 1895, Rowe entered upon the possession of the leased premises under his mortgage, and of the movable goods and chattels contained in it, and advertised the same for sale, including a sale of the stable and carriage-house, treating them as chattels, and complainant files his bill to enjoin such sale.

On the filing of the bill an order to show cause why an injunction should not be issued was granted, and on the return of that order the defendant, Rowe, appeared and answered.

*Mr. Francis J. McGowan,* for the complainant.

*Mr. Philemon Woodruff,* for the defendant.

PITNEY, V. C.

Two questions were discussed—*first,* whether or not the surrender of the lease by Dietrich to the complainant, and the release of the right of purchase, was valid and cut off Rowe's interest; *second,* whether the stable and carriage-house are fixtures and not removable between landlord and tenant, or whether they are chattels capable of being removed as trade fixtures.   ᐧ ᐧ

With regard to the *first* question :

It was settled by the case of *Hutchinson* v. *Bramhall, 15 Stew. Eq. 372,* that a mortgage on a leasehold interest of this kind was good and sufficient if recorded as a chattel mortgage.  ᐧ

In that case it appears by the report in *13 Stew. Eq. 84,* that there were two chattel mortgages, in one of which the only property mentioned in the schedule was " the building known as McChesney & Hutchinson's ice cream manufactory." In the other mortgage the property described is mentioned as " machinery, the building and the leasehold interest." Mr. Justice Van Syckel, in commenting on these mortgages (*15 Stew. Eq. 382*), says : " In legal effect these mortgages do not differ. They both cover the interest of McChesney & Hutchinson in the said building and land. The surplus in court stands in the place of such leasehold interest as the lessees had."

Applying that rule here, I take it I must hold that the chattel mortgage, describing, as it does specifically, the buildings, and then mentioning " lease given by John Firth to William J. Morfilt for five years of the above-mentioned premises," covers the leasehold interest, and having been promptly recorded, passed the title by way of mortgage in the lease to the mortgagee. It is true that the mortgage was executed not by Morfilt, the lessee, but by his sublessees, Dietrich & Losey, back to Morfilt to secure the consideration money on a sale by the latter to the former, but the sublease from Morfilt to Dietrich & Losey was in effect an assignment of the lease, for it·was given for the precise unex-

pired ·term of the lease, and reserved precisely the same amount of rent as did the original lease.

It seems to be clear enough that the effect of such an under-lease was that of an assignment of the whole term. *Tayl. Land. & T.* § *16 and note, and* § *109.* The attempt on the part of Dietrich and the complainant to destroy the lease and option of purchase by a surrender, must fail as against Morfilt as mort-gagee, and Rowe, the defendant, as his assignee.

The *second* question is as to whether or not the stable and carriage-house must be considered as trade fixtures which may be removed at or before the end of the term. The case is on the border line, and the authorities are not in accord on the sub-ject, but after careful examination of ·such as are within my reach, I come to the conclusion that these buildings must be considered, at least upon the evidence submitted upon the hear-ing of this motion, as trade fixtures. The evidence as to the character of their attachment to the ground is not at all clear, and the affidavits give results rather than facts. But I find nothing to indicate that they are fastened to the ground in any other way than by placing them upon brick or stone foundations, to which they are not attached except by their weight. Be that as it may, they are not a part of another structure. The lot was vacant when the lease was executed, and the buildings were wholly erected by the lessee. They may be removed *in toto* and the premises remain in as good condition as they were before they were placed thereon. In this respect the case differs from that of an addition to a previous building or of a piece of machinery affixed to a previous building already on the prem-ises, which cannot be removed without serious injury to the premises as they were at the time of the demise. I find nothing in the leases, or either of them, to indicate what was the inten-tion of the parties in that regard. In that respect the case varies from that of *Dean* v. *Hutchinson, 13 Stew. Eq. 83,* in that there the lease was for twenty years, and the lessees agreed that unless they erected on the premises within four months from the date of the lease, " building thirty feet by sixty, three stories high," the agreement should be void, and that at the date of the expira-

tion of the term they would quit and surrender the premises, and that they should then be in as good state and condition as reasonable use and wear would permit. This language varies from that used in the present case, where there was merely permission given to erect buildings such as are used in carrying on the livery stable business, and the covenant is that the premises should be kept in as good repair as the same were at the commencement of the term ; while in one of the leases executed that covenant is erased.

Most of the cases cited by counsel for the complainant were those of mortgagor and mortgagee, or grantor and grantee, where a different rule prevails from that applied in cases of landlord and tenant. The question was carefully examined by Judge Harris, of the supreme court of New York, in *King* v. *Wilcomb, 7 Barb. 263;* and again, at greater length, in *Dubois* v. *Kelly, 10 Barb. 495,* and all the cases up to that date are there collected. In that case the keeper of a hotel on leased premises erected a barn and shed built on a stone foundation, on a side hill, for use in the nature of a stable and barn in connection with the hotel. It was held they were removable as trade fixtures.

To the same effect is the case of *Ombony* v. *Jones, 19 N. Y. 234.* There the lessee of an inn erected upon the demised premises a ball-room resting upon stone posts. Judgment went against him, and the building was sold at sheriff's sale, and it was held that the purchaser got a good title.

The leading case in this country is *Van Ness* v. *Pacard, 2 Pet. 137.* So a dye-house, seventy-five feet long, thirty-five high and thirty wide, and bolted into the ground, was held removable in *Talbot* v. *Whipple, 14 Allen 177;* and an ice-house in *Antoni* v. *Belknap, 102 Mass. 193.* And to the same effect is *Ewell Fixt. p. 94 et seq.,* where all the cases are collected. The cases up to 1879 are collected in *Tayl. Land. & T. (7th ed.)* § *545.*

I do not think, however, that it is either proper or necessary that the question should now be finally determined.

The order to show cause, so far as it restrains the sale of the buildings and the property covered by the chattel mortgage, must be discharged, and the sale may proceed upon condition

that the defendant will give notice at the sale that the buildings are not to be removed without the further permission of the court. The term does not expire until the 1st of February next, and the complainant must prosecute his suit as rapidly as the practice of the court will permit, so that the cause may be brought to a final hearing before the end of the term.