202 N.J. Super. 11 (1985)
493 A.2d 1261
THE ANTHONY L. PETTERS DINER, INC., PLAINTIFF-APPELLANT,
v.
DENNIS STELLAKIS, CHRIS STELLAKIS AND JACQUES VERDI, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1984.
Decided April 22, 1985.
*13 Before Judges MORTON I. GREENBERG, O'BRIEN and GAYNOR.
Jack Goldstein argued the cause for appellant (Donald A. Wollman, attorney).
*14 Joseph R. Postizzi argued the cause on behalf of respondents.
The opinion of the court was delivered by O'BRIEN, J.A.D.
At issue in this appeal is the effect of the exercise, by a lessee, of an option to purchase real estate upon the security interest of the owner-lessor, who had sold a business operated on the real estate to the lessee and had received an assignment of the lease as partial security for the balance of the purchase price. The trial judge, in a summary proceeding, ruled that the leasehold interest merged into the fee and ordered the owner-lessor to give a deed to the premises unencumbered by any limitation to protect its security. We reverse and remand the matter to the trial court for a plenary hearing to ascertain the intention of the parties.
Plaintiff-appellant Anthony L. Petters Diner, Inc. (Petters) owned certain real estate upon which it conducted a restaurant and cocktail lounge business. On February 28, 1979, it executed a written contract to sell the business to defendants Dennis Stellakis, Chris Stellakis and Jacques Verdi (defendants) for $600,000, to be paid by a $10,000 deposit, $90,000 cash at closing and a $500,000 promissory note payable monthly over 20 years. Everything connected with the business was sold, including the plenary retail consumption license, but not the real estate. In the contract, defendants agreed to secure the promissory note by a security agreement with a financing statement covering all of the existing and after acquired fixtures, equipment, and stock in trade. Petters agreed to lease the real estate to defendants for a 25-year term, and they agreed to assign the lease to Petters, in escrow, together with the retail consumption license, as additional security for payment of the promissory note.
In accordance with a right given in the contract, defendants formed two separate corporations to which they assigned their *15 rights under the contract. Both corporations are wholly owned by defendants who are to remain personally liable on all obligations as guarantors. The corporation known as Stellverdi, Inc. operates the business as tenant under the lease, and the corporation known as Denjachris, Inc. holds the liquor license.[1] As further security to Petters for payment of the promissory note, all stock certificates of both corporations, with assignments fully executed, are held in escrow by Petters' attorney until the promissory note is paid in full. Upon default in any monthly payment on the note or rent for 10 days and after giving the requisite notice, the escrow agent is authorized to turn the stock certificates, the lease and the liquor license over to Petters who would then become owner of the corporations.[2] Significantly, the following language appears in the contract:
Purchasers further agree that in the event there is a default ... within the time set forth above, the seller shall have the right to enter upon the property and assume operation of the business in addition to any other rights and remedies as provided herein. [Emphasis supplied.]
The contract granted an option to defendants to purchase the real estate upon which the business is located. The initial option purchase price was $350,000 and could be acted upon any time within five years of the closing. The contract provided that this option be contained in the lease between the parties. The lease was executed on February 28, 1979 and contained the option to purchase, as required.
Title to the business closed on May 21, 1979, and all of the documents called for by the contract were executed by the parties. In addition, a document labeled "Statement of Agreement" was executed by the parties. It is dated May 21, 1979 and was recorded in the Monmouth County Clerk's Office on *16 May 24, 1979. This instrument provides that the lease agreement, dated February 28, 1979, survives the closing of title, that "both the contract and lease cover the property known as Block 12, Lots 1-9 on the Tax Map of the Borough of Keyport" and that "[i]t is further understood and agreed by and between the parties herein that the said property is subject to all of the terms and conditions of the aforementioned contract and lease agreement ..." It then quotes the subordination clause[3] and the option clause in the lease. The parties disagree as to the purpose of this document but agree it was recorded to give notice that the real estate was subject to the terms and conditions of the contract and lease.
By letter of June 13, 1983 the attorney for defendants notified Petters that "the lessees do herewith exercise their option to purchase the premises."[4] Petters' attorney responded by letter dated June 29, 1983 in which, after referring to the fact that the lease was held in escrow as additional security for repayment of the note, he said: "I am of the opinion that upon transfer of the deed to the purchasers, the lease would merge *17 therein and be extinguished, thus eliminating the intended security of the lease." He then stated:
In order to carry out the intent and purpose of this provision an equal substitute for this security must be provided for. I suggest that whoever takes title to this property immediately enter into a lease arrangement with the seller, which lease shall be held in escrow by me as security for the payment of the notes. The terms and conditions would be exactly the same as those provided for in the original lease agreement between the seller and purchaser.
This suit was instituted to construe the terms of the contract and other documents, and to declare a notice from defendants making time for the real estate closing of the essence invalid. The deed proffered by Petters was attached to the complaint. It was a standard form bargain and sale deed, covenant against grantor's acts, but contained the following conditions:
SUBJECT to a contract of sale dated February 28, 1979 between grantor and grantees herein for the sale of the business of "Town & Country Inn."
SUBJECT to a lease agreement dated February 28, 1979 between grantor and grantees herein for the premises being conveyed herein, which lease shall not merge in this deed.
SUBJECT to an agreement between grantor and grantees herein, known as an assignment of lessee's interest in lease, dated May 21, 1979.
Grantees herein shall not be permitted to give any mortgage to be recorded as a lien on the premises being conveyed herein, which shall exceed the purchase price for said premises, as provided for in the contract of sale dated February 28, 1979.
After hearing oral argument without taking any testimony, the trial judge concluded that Petters was obliged "to convey marketable title"[5] to defendants by deed which was to "contain no reference to a leasehold interest or a contractual interest nor any other form of security interest to be retained by [Petters] in the property" and entered a judgment to that effect. The judge further ruled that upon delivery of the deed to defendants the leasehold interest will merge by operation of law into the fee interest. As a result, Petters now argues the assignment of the lease will be meaningless and no longer serve as *18 security and as a method of reentry upon the property in the event of default in payment of the business purchase note, as agreed to in the contract.
While he recognized that merger is largely a question of intention, citing Colquhoun (Eliz.) Estate v. Colquhoun (Robt.) Est., 88 N.J. 558 (1982),[6] the trial judge found:
What is clear from the cases, however, is that it is the intention of the person in whom the estates ordinarily would merge that is controlling. The estates will merge, unless it is not to his interest ("the particular equities of the case") or unless the original parties have expressly declared that merger will not occur should the estates come under common ownership at some future date. The parties here did not in their otherwise very detailed Contract and Lease  so expressly declare. In this case the party which will hold both the fee and the leasehold has no intention that merger not take place; merger is in its best interest. Diner [Petters] has no right, legal or equitable, to prevent it.
While we agree generally with the conclusions of the trial judge as to the law of merger, we disagree with his application of that law to this case.
Merger is not favored in equity and is never allowed unless for special reasons and to promote the intention of the parties. See Mueller v. Morrell, 112 N.J. Eq. 200, 201 (Ch. 1933); see also Mobley v. Harkins, et al., 14 Wash.2d 276, 281, 128 P. 2d 289, 291 (Sup.Ct. 1942); Annot. 143 A.L.R. 93 (1943). The doctrine of merger of estates is not to be applied rigidly and mechanically as it was at common law. See Trustees etc. v. Intern. Min. & Chem. Corp., 91 N.M. 55, 56, 570 P.2d 593, 594 (Sup.Ct. 1977). The presumption of merger is rebuttable and may always be overcome if the intention that there be no merger is "expressly declared." Gimbel v. Venino, 135 *19 N.J. Eq. 574, 576 (Ch. 1944). Furthermore, the presumption of merger may be overcome not only by an expressly declared intention to the contrary, but also by "indications of a contrary intention" or by such an intention which "may appear from the particular equities of the case." Ibid; see also Tennenberger v. Sozio, 101 N.J. Eq. 64, 65 (Ch. 1927).
In our view the proper role of the doctrine of merger in equity recently was well expressed by a Florida court where it said in Contos v. Lipsky, 433 So.2d 1242, 1244 (Fla.App. 1983):
The parties agree that the once inflexible common law rule  that is, that whenever a greater estate and a lesser estate coincide in the same person without any intermediate estate, the lesser estate merges into the greater  has given way to the rule that equity will prevent or permit a merger as will best serve the purpose of justice and the actual and just intent of the parties, whether express or implied. See Matter of Herring's Estate, 265 N.W.2d 740 (Iowa 1978); Evans Products Co. v. Decker, 52 A.D.2d 991, 383 N.Y.S.2d 457 (N.Y. Sup. Ct. 1976); Waite Lumber Co. v. Masid Bros., Inc., 189 Neb. 10, 200 N.W.2d 119, 74 A.L.R.3d 320 (1972); Browning v. Browning, 23 Tenn. App. 338, 132 S.W.2d 359 (1939); William P. Rae Co. v. Courtney, 250 N.Y. 271, 165 N.E. 289 (N.Y. 1929). See also Jackson v. Relf, 26 Fla. 465, 8 So. 184 (1890); Annot. 143 A.L.R. 93 (1943).
It is not clear from the cases that it is only the intention of the person in whom the estates ordinarily would merge that is controlling or that "the estates will merge, unless it is not to his interest," as held by the trial judge. While this rule is generally correct, it is a corollary rule of another merger rule which holds that "[n]ormally, the owner of the fee title will not be permitted to keep alive an encumbrance on real estate which he has satisfied." Camden Co. Welfare Bd. v. Federal Dep. Ins. Co., 1 N.J. Super. 532, 552 (Ch.Div. 1948). Instead a court of equity "will keep [such] an encumbrance alive or consider it extinguished as will best serve the purposes of justice and the actual and just intention of the party [in whom the estates would ordinarily merge]" provided his intention is "innocent" and "injurious to no one." Andrus v. Vreeland, 29 N.J. Eq. 394, 396 (Ch. 1878). This corollary rule is most often invoked where a mortgagor conveys the equity of redemption to his mortgagee, or where a conveyance of a mortgaged fee is made *20 to the mortgagee. In either situation, the estates meeting will not merge "unless it appears that such was the intention of such person [i.e. the mortgagee]." See 13 N.J.Prac. (Leiberman, Abstracts and Titles) (3d Ed. 1966), § 944, at p. 567.
In the instant case, the pertinent question is not whether defendants should be allowed to keep alive an encumbrance which has been extinguished, but whether the contracting parties intended that the two estates should merge if Petters' fee was later conveyed to defendants. In such a case, the "intention of the parties" general rule is followed, Colquhoun, 88 N.J., at 565, not the corollary rule which looks only to the intention of "the person in whom the estates ordinarily would merge."
While we believe the trial judge correctly expressed the intention of defendants at the time they exercised the option, in our opinion that is not the intention which controls under the circumstances in this case. Rather, it is the intention of the parties at the time the initial contract documents and the assignment of the lease were executed. Both the lease and the contract contained the option to purchase with the potential for merger in the event of exercise of the option. At the time the contract documents were executed and the lease was assigned as security for the balance of the purchase price, the parties did not expressly declare that merger would not occur. Conversely, did they intend that merger would occur? We seriously question that they did but on this record we can draw no definite conclusion.
The language used by Petters' attorney in his June 29, 1983 letter could be construed as an indication of an intention by the parties that merger occur in the event the option to purchase was exercised. "The courts have long recognized the fact, that where there is ambiguity in a written instrument, or doubt as to its proper construction, the practical interpretation by a party to it, is always a consideration of great weight, and there is no surer way to ascertain what the parties intended, than to see *21 what they have done as they often claim more, but rarely less than they are entitled to." Thomsen v. Riedel, 114 N.J.L. 379 (E. & A. 1934); see also Journeymen Barbers, etc., Local 687 v. Pollino, 22 N.J. 389, 395 (1956).
However, it seems apparent to us that in drafting the detailed contract documents, neither Petters nor defendants considered the legal consequence of exercise by defendants of the option to purchase the real estate. Inclusion of a clause as to whether or not merger would occur was obviously in the best interest of both parties. Yet, apparently, neither suggested inclusion of such a clause in any of the contract documents. This appears to have been an oversight since all of the documents reflect an intention that Petters' security for payment of the balance of the promissory note not be impaired.
Inasmuch as the parties did not expressly deal with the question of merger, it is the obligation of the court to ascertain their intention. In doing this we look at all of the contract documents. Where several writings are made as part of one transaction relating to the same subject matter, they may be read together as one instrument, and the recitals in one may be explained, amplified or limited by reference to the other  the one draws contractual sustenance from the other. See Schlossman's, Inc. v. Radcliffe, 3 N.J. 430 (1950); see also Lawrence v. Tandy & Allen, 14 N.J. 1, 6-7 (1953) and the cases therein cited.
Many provisions in the lease reflect the coordination between the lease and the other contract documents. For example, the assignment clause reads as follows:
THIRD: Lessee will not assign this lease in whole or in part, nor sublet all or any part of the demised premises, without the prior written consent of lessor in each instance, except should the entire indebtedness due seller in connection with the sale of the business of "TOWN & COUNTRY INN" as per contract dated February 28, 1979, be paid in full, then, in such event the consent will not be unreasonably withheld.
The subordination clause provides:
No such advance or mortgage shall exceed the balance due lessor on the agreement to purchase the business known as Town & Country Inn, it being *22 understood that this subordination clause shall not apply to any monies in excess of the balance due on said contract.
In paragraph 16th of the lease concerning condemnation, there is a further reference to the contract to purchase. Even the option clause itself provides that the option may not be exercised unless the tenant has "fully performed all of its obligations pursuant to the terms of the lease and is not in default of any payments on account of the notes to be executed in connection with the sale of the business of "TOWN & COUNTRY INN.'" The option clause in the contract also contains the following provision:
In the event the option is exercised, it is expressly understood that any mortgage to be recorded as a lien on the premises shall not exceed the purchase price of said realty to protect the balance of the monies due to the seller herein relative to the sale and purchase of the business as provided herein.
A careful reading of the contract, the lease, the recorded "Statement of Agreement" and the assignment of the lease, all disclose an intention of the parties that the security of Petters for payment of the balance due on the purchase price represented by the promissory note not be impaired. While it is true that Petters will receive $350,000 cash for the sale of the real estate, its security for the remaining $450,000 due on the promissory note would be severely impaired if the conclusion of the trial judge prevailed.[7]
The parties agreed that in the event of a default Petters would have the right "to enter upon the property and assume operation of the business in addition to any other rights and remedies...." The use of the word "property" must include the real estate since the business is conducted upon that real estate. It is evident that the provision for assignment of the lease to be held in escrow was to assure Petters' unfettered right to reenter the real estate in the event of default. In the absence of some provision for Petters to retain this right of *23 reentry on the real estate, notwithstanding conveyance of that real estate to defendants, a substantial right of Petters, agreed upon between the parties, will be lost. Furthermore, as noted, there is a specific provision in the contract which precludes defendants, should they exercise the option and purchase the property, from recording a mortgage in excess of the purchase price. This restriction is expressly stated as being "to protect the balance of the monies due to the seller herein relative to the sale and purchase of the business as provided herein." It appears that this provision was intended to limit the amount Petters would have to pay to protect its security to the amount that Petters received for the sale of the real estate, in the event defendants defaulted in payment of their mortgage. Thus, its right of reentry onto the property to run the business would not be impaired, and if this required satisfaction of the mortgage to protect that right, the cost would not exceed the amount received for the sale of the property. The trial judge did not explain why this expressly agreed upon limitation should not be contained in the deed.
Although it is true that both the contract and the lease require that upon exercise of the option, Petters deliver "marketable title," this provision is contained in the same paragraph in the contract as the provision limiting the amount for which the premises can be mortgaged. Thus the parties intended that the marketable title to be conveyed would be in such form that Petters' security for the balance of the purchase price would not be impaired. In addition, the "Statement of Agreement" dated May 21, 1979, which was prepared by defendants' attorney, was recorded in the chain of title to give notice to the public of the agreement between the parties relating to this real estate. That document specifically provides that the real estate "is subject to all of the terms and conditions" of the contract and lease between the parties which, as stated, clearly reflect an intention to protect and preserve the security interest of Petters for the balance of the purchase price for the business.
The contract had a specific provision that

*24 at the same time the lease is executed the purchasers shall execute an assignment of said lease to the seller, which shall be held in escrow by Donald A. Wallman, Esq. [Petters' attorney] as additional security for the purpose of transferring the lease back to the seller in the event the purchasers are unsuccessful in obtaining the plenary retail consumption license and as security in the payment of the notes given hereunder by the purchasers to the seller.
Pursuant to that clause, the lease, which was first assigned by defendants to the corporations, was assigned by defendants and Stellverdi, Inc.[8] to Petters. While the trial judge recognized the existence of this assignment, he concluded that it was a future assignment. He reasoned that, since admittedly defendants and the corporations were not in default in their payments on the promissory note, the condition for delivery of the assignment to Petters had not yet been met; whereas, the obligation to convey the premises upon exercise of the option was a present obligation.
Although this reasoning is appealing, it does not consider the intention of the parties at the time of the execution of the contract documents. The assignment of the lease is couched in present terms with a provision that:
So long as there shall exist no default by the Assignor in the payment of the indebtedness secured hereby or in the performance of any obligation of the assignor herein or in the Lease, or in the Contract of Sale, or any other instrument securing said indebtedness, the assignor shall have the right to retain, use and enjoy said premises.
The intervention of an escrowee does not alter the character of the assignment as a present assignment as security for the obligation. A lease may be assigned as security for a debt. If properly acknowledged, it may be recorded, see N.J.S.A. 46:16-1a, although the assignment in question was neither acknowledged nor recorded.
It is difficult to categorize the legal nature of the assignment of their lease by defendants. In a somewhat similar security transaction, the assignment of a lease as security for payment of a debt was determined by a New York court to *25 be a chattel mortgage on the leasehold. There, the court held: "A chattel mortgage, unlike a mortgage on real property, works a present transfer of the legal title to the mortgaged property, defeasible by payment of the indebtedness it is given to secure." See Nipet Realty Inc. v. Melvin's Rest. & Bar, Inc., 67 Misc.2d 790, 327 N.Y.S.2d 2, 6 (Civ.Ct. 1971). A lessee may legally give a mortgage on his leasehold interest. Hutchinson v. Bramhall, 42 N.J. Eq. 372 (E. & A. 1886); Firth v. Rowe, 53 N.J. Eq. 520 (Ch. 1895). Formerly in this State, the common law mortgage, whether chattel or real, vested the mortgagee with a defeasible title to the security with the concomitant right of immediate possession, subject to defeat upon the timely payment of the mortgage loan by the mortgagor. Today, the mortgage is merely security for the debt, the legal estate remaining in the lessee mortgagor. See L.F. Dommerich & Co. v. Bress, 280 F. Supp. 590, 597 (D.N.J. 1968); 22 N.J.Practice, LeWine Landlord & Tenant Law, 3d Ed. 1962, § 301, p. 343. Furthermore, a chattel mortgage as a secured transaction is now covered by the Uniform Commercial Code, N.J.S.A. 12A:1-101 et seq., particularly Chapter 9. However, certain transactions are excluded from the Chapter by N.J.S.A. 12A:9-104, which provides:
This chapter does not apply
(j) except to the extent that provision is made for fixtures in 12A:9-313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder.
We conclude that the hybrid nature of the assignment of the lease in escrow requires that the intention of the parties be ascertained. From the language which they used, the assignment appears to be a present transfer of legal title to the lease, albeit in escrow, defeasible upon payment of the indebtedness it was given to secure, with a present right of possession in the assignors as long as they are not in default. Upon default, after appropriate notice has been given, the assignment of lease is to be turned over to Petters who shall then be entitled to possession of the premises without any further claim of defendants. We fail to see how exercise of the option and conveyance *26 of the premises to defendants can alter the nature of the assignment of the lease as security for the debt. We recognize that the assignment itself was made subject to all of the terms and conditions of the lease and contract of sale, including the option to purchase. However, notwithstanding exercise of the option and transfer of legal title to the premises to defendants, they continue to be liable for the debt which the assignment of the lease was given to secure, and upon default no further action need be taken by defendants to enable Petters to reenter the premises.[9] We therefore conclude that it may not have been the intention of the parties that the lease merge into the fee if the option to purchase was exercised by defendants, thereby extinguishing the assignment as security.
Although the contract documents could and should have been more precise in addressing the potential for merger, we do not construe the failure to do so as reflecting an intention that merger occur. The trial judge correctly observed that the parties did not "expressly declare" that merger would not occur if the option to purchase the real estate was exercised. However, since the presumption of merger may be overcome by such intention "which may appear from the particular equities of the case," it is not legally dispositive that the parties did not "expressly declare" that merger was not to occur.
The coordination of all of the documents, particularly the lease, the assignment of the lease, the contract, and the promissory note for the balance of the purchase price, lead to the conclusion that the parties may not have intended that merger occur. The clauses which Petters inserted in its proposed deed simply recite the agreements between the parties sufficient to *27 put a prospective purchaser of the real estate from defendants on notice to inquire into the status of those agreements.[10]
In our view, application of the doctrine of merger under the circumstances in this case may thwart the intention of the parties. The absence of any reference to merger in the contract documents, coupled with the apparent manifest intention of the parties that Petters' security be protected, creates an ambiguity that can only be resolved by ascertaining the intention of the parties on the question of merger at the time they entered into their various agreements.
This suit was instituted by verified complaint and order to show cause to which defendants filed an answer and counterclaim. It was decided in a summary manner. The trial judge construed the failure to expressly declare that merger did not apply to be dispositive of the issue. In effect, he applied the well settled doctrine that the law is a silent factor in every contract and that parties who enter into transactions must be presumed to have had the law in mind. See Gibraltar Factors Corp. v. Slapo, 23 N.J. 459, 465 (1957). However, in our view, application of the doctrine of merger, in equity, is dependent upon the intention of the parties. Our review of the documents suggests that the parties may not have intended that merger occur. However, determination of that intention will require that evidence be presented at a plenary trial as to the parties' intentions.
Ordinarily the construction of a written agreement is a matter for the court, but where its meaning is uncertain or ambiguous and depends upon parole evidence admitted in aid of interpretation, the meaning of the doubtful provisions is a *28 question of fact. Michaels v. Brookchester, Inc., 26 N.J. 379, 387 (1958). In the quest for the common intention of the parties to a contract, the court must consider the relations of the parties, the attendant circumstances, and the objects they were trying to attain. An agreement must be construed in the context of the circumstances under which it was entered into, and it must be accorded a rational meaning in keeping with the express general purpose. Tessmar v. Grosner, 23 N.J. 193, 201 (1957).
We believe the result reached by the Supreme Court in Ace Stone Inc. v. Wayne Tp., 47 N.J. 431, 440 (1966), is equally applicable to this case. There, the Supreme Court said:
It appears to us that the just course now is to remand the proceeding ... to enable the parties to introduce such oral and documentary evidence as may be available and relevant in aid of interpretation. After all of the evidence is in, determination may fairly be made as to whether the language used in the contract by the parties, when considered in the full light of their relations and objectives, and the attendant circumstances, contemplated that the extension of time clause and the related clauses would preclude plaintiff from asserting a claim for damages under the particular circumstances presented.
Reversed and remanded to the Chancery Division for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.
NOTES
[1] These corporations are referred to in appellant's brief as "the corporate defendants," although they are not named as defendants in the original complaint nor on this appeal.
[2] The individual defendants also executed resignations as officers and directors of the corporations and executed a consent to transfer of the liquor license to Petters.
[3] This is clause 15 which subordinates the rights of the lessee (defendants) to the rights of the owner (Petters) and all mortgagees of the premises but "no such advance or mortgage shall exceed the balance due Lessor [Petters] on the agreement to purchase the business ... it being understood that this subordination clause shall not apply to any monies in excess of the balance due on said contract." It also provides that if lessee pays any sum due on any mortgage of lessor, lessee is entitled to a set-off against the rent and against the balance due on the note for the purchase price of the business.
[4] It is not clear as to whether the option was being exercised by Stellverdi, Inc., to whom the lease had been assigned, or by the individual defendants. While Petters argues that the assignment of the lease deprived the individual defendants of the right to exercise the option, the letter from Petters' attorney indicated that it did not care to whom the real estate was conveyed so long as its security was not impaired. Significantly, it did not join the corporate defendants in this action although it alleged in paragraph 8 of the complaint, "On May 21, 1979 defendants assigned their right, title and interest in the lease to Stellverdi, Inc." and in paragraph 11, "The plaintiff was willing to deliver a deed to defendants, although they relinquished their option, provided they comply with certain terms and conditions."
[5] Both the contract and lease provide that if the option is exercised the seller will deliver "marketable title" to be insured by a title insurance company authorized to do business in the State of New Jersey.
[6] In Colquhoun, 88 N.J. at 565, the court said: "... the intention of the parties generally determines whether two property interests will be legally merged. [Citations omitted.] ... As observed in Gimbel v. Venino, 135 N.J. Eq. 574, 576 (Ch. 1944): `[m]erger is largely a question of intention and stated generally the law is that when a mortgagee acquires the equity of redemption, the presumption is that he intends to extinguish his mortgage interest by merging it in the estate in fee. The presumption is rebuttable and will not prevail when it is clear that a merger was not intended, which intention may be expressly declared, or may appear from the particular equities of the case.'" [Id. at 565]
[7] The trial judge expressed the view that "[t]he note for the purchase of the business has been substantially reduced." In fact, at the time of the exercise of the option, only 10% of that note had been paid, leaving a balance of $450,000.
[8] This assignment neglected to assign the interest of Denjachris, Inc. to which the lease had also been assigned by defendants.
[9] Of course, when the deed is delivered and defendants become owners of the property, if there is no merger, Petters will be obliged to pay the rent called for by the lease to defendants, perhaps in the form of credit against the amount due on the indebtedness. We assume that the note had an acceleration clause rendering the total amount due in the event of default.
[10] Actually, the recorded "statement of agreement" executed by the parties on May 21, 1979 should alert any prospective purchaser to the existence of the contract between the parties. The record does not indicate in what book this document was recorded by the Monmouth County Clerk, but we assume that a search of the title to the real estate would reveal its existence.