Van Houten v. Van Winkle.

ELIZABETH VAN HOUTEN

v.

STEPHEN W. VAN WINKLE.

1. If a joint claim against a number of defendants is united in the same bill with a separate claim against several, but not all, of them, one or all of the defendants may demur for multifariousness.

2. Laches appearing by the bill, may be taken advantage of by demurrer.

3. Where a complainant who holds documentary evidence by which a *prima facie* case may be made, fails to bring suit in equity for many years and until the death of witnesses whose testimony might have rebutted the case thus made, she must, in her bill, explain and sufficiently excuse her laches.

4. Under Rule 225 the grounds of demurrer must be specified, and an objection that the bill lacks equity, is not only insufficient where the defect in the bill is obscure, but also where it is plain, if it be collateral to the main case.

On bill and demurrer.

*Mr. Eugene Stevenson*, for the demurrant.

*Mr. George S. Hilton*, for the complainant.

THE CHANCELLOR.

The object of the bill is to reform one deed and to set aside another. The allegations of the bill present the following facts:

The complainant's father, James Van Blarcom, who was a resident of the city of Paterson, died in the year 1850, intestate, leaving surviving him his widow and four daughters. When he died he was seized of several parcels of real estate in Paterson. Shortly after his death his widow released her dower in his lands to her four daughters. Within a month after this release the daughters, by interchanging deeds, executed by them and their respective husbands, proceeded to partition, among themselves, the lands descended to them. In course of this par-

tition two deeds were made to the complainant, one in March, 1850, for her sisters' three undivided three-fourths of a house and lot on Park street, and the other in April of the same year for a similar interest in three other parcels of land. In the deed for the Park street property, the granting clause was in these words, " do grant, bargain, remise and convey unto the said party of the second part," without the addition of the words "her heirs " or " her heirs or assigns," and in the *habendum* in this language :

"To have and to hold the above-described premises as herein before granted with the appurtenances unto the said party of the second part for the term of the natural life of said Elizabeth Van Winkle and to the heirs and assigns of the said Elizabeth forever from and after her death."

The deed made in April for the other parcels of land unquestionably conveys the fee to the complainant.

About a year later, in May, 1851, the complainant, with her husband, conveyed the property described in the deed of April, 1850, to one Helmah Van Winkle, Sr., in fee, in trust to permit the complainant and her husband to possess it and receive the rents, issues and profits, they paying taxes and expenses of maintenance, during their joint lives, the survivor of them to continue in such beneficial enjoyment alone during his or her life. If the complainant should die leaving a child or children, then to convey the property to such child or children at her death, or, if her husband should survive her, upon his death ; but if she should die without leaving a child or children, then to convey the property to the complainant's three sisters, the issue of any sister dying before such conveyance to take his, her or their parents' share.

Then provision is expressly made that the trustee shall not be put to any expense by reason of the trust, and he agrees to carry it out.

Neither power to direct a sale of the lands nor to revoke the trust is reserved to the complainant.

At the time these deeds were made, the complainant had no children and was in poor health. She did not either understand

the papers or realize the character of the trust-deed, until just prior to her husband's death, in 1876, when he told her that they were the product of his management to secure to himself a life estate in her property if she should die without having had a child born alive during their wedlock. She would not have executed the trust-deed nor have accepted the deed for the Park street house and lot, if she had known their nature and effect.

By her said husband the complainant afterwards had three children, all of whom are living and parties to this suit. Two of them are married and have children, who are also parties to the suit. One of the complainant's sisters is dead. Her descendants, and the complainant's surviving sisters and their descendants, are parties to the bill. Thus all persons *in esse*, who possibly may be heirs of the complainant and her children or sisters, are parties to the suit.

Helmah Van Winkle, Sr., the trustee, died in 1885, and his eldest son, Stephen W. Van Winkle, the demurrant, is a party defendant.

After the death of her said husband (Van Winkle) the complainant, in February, 1879, married one Ralph A. Van Houten, from whom she was subsequently, in June, 1886, absolutely divorced. Thus the name Van Houten, by which she sues, is explained.

In 1870 a railway company condemned a portion of one of the tracts covered by the trust-deed for which it paid $4,000, which the trustee invested in Paterson city bonds, the interest from which has since then been paid to the complainant.

A portion of the trust property constituted James Van Blarcom's homestead. It consists of a farm of about sixty-four acres, and has become very valuable for building sites, so valuable, indeed, that it is estimated that it may be sold for upwards of $50,000. The house upon it is old and dilapidated. The taxes are heavy. The net income of the complainant from the entire property that she inherited does not exceed $900 a year, and it would now add much to her comfort if she could sell the property, as, prior to 1876, she believed she could do.

Stephen W. Van Winkle, the present trustee, demurs to the bill upon three grounds—first, because it is multifarious, in that it unites an application for reformation of a deed in which the demurrant has no concern, with an application to set aside a trust in which he is concerned ; second, because it discloses that the deed, of which reformation is sought, conveys to the complainant a fee, and therefore that there was no mistake in its form to be corrected, and, third, for want of equity.

It is clear that the first ground of demurrer is well taken. The reformation of the deed of the Park street property, and the setting aside of the trust, are entirely distinct matters, having no connection with, or dependence upon, each other. The demurrant has no concern in the former of these matters, and therefore has the right to object that litigation which involves the trust shall not be confounded with or delayed or possibly prejudiced by that which may grow out of the reformation of the deed. If a joint claim against a number of defendants is united in the same bill with a separate claim against several but not all of them, one or all of the defendants may demur for multifariousness. *Emans* v. *Wortman, 2 Beas. 205; Crane* v. *Fairchild, 1 McCart. 76; Story Eq. Pl.* § *271.*

Having determined this point in favor of the demurrant, it is unnecessary to consider his insistment that the deed, of which reformation is sought, conveys a fee, for, if the reformation is a matter with which he has no concern and it must be eliminated from the bill, he is not in a position to question the complainant's right to ask for it in another suit.

Under the third cause of demurrer, want of equity, attention is called to the fact that, upon its face, the bill shows, that for nearly forty years after the trust-deed was made, and for nearly thirteen years after the complainant realized that she had made it, and its character, she failed to attack it, and apparently acquiesced in the situation it made, knowing that all parties concerned in the transaction were growing old, and that the testimony to support or impeach it must soon be lost, and, in fact, until after the death of her husband and the trustee, Helmah Van Winkle, Sr., both of whom had participated in making the

deed, and one of her sisters, who was interested under the terms of the trust, and all the husbands of her sisters, so that during her delay valuable testimony was lost, and the value of her testimony was enhanced, possibly to the serious injury of the defendants to her bill.

Equity requires that a suitor shall assert and demand his remedial rights with diligence and without delay. After he has been informed of facts and circumstances which apprise him of the wrong, it is always dangerous, and may be fatal, to delay in pursuing the remedy which is open to him in equity, for the lapse of time carries with it the memory and life of witnesses, the muniments of evidence and other means of proof, and where they have been lost during willful, negligent and unreasonable delay, that circumstance has uniformly been accorded great and frequently controlling weight against the complainant in the determination of a cause. *Doughty* v. *Doughty, 2 Stock. 347; Hance* v. *Conover, 4 Stew. Eq. 505; Brown* v. *Mutual Benefit Life Insurance Co., 5 Stew. Eq. 809; Wilkinson* v. *Sherman, 18 Stew. Eq. 413; Lynch's Adm's* v. *Vanneman, 18 Atl. Rep. 468; Jenkins* v. *Pye, 12 Pet. 241.*

Such laches appearing unexplained upon the face of the bill, may be taken advantage of by demurrer. *Story Eq. Pl. § 503; Rolfe* v. *Gregory, 31 L. J. Ch. 710.*

In the case last cited the complainant applied to the court to establish a resulting trust twenty years, less one day, after she became cognizant of the circumstances which entitled her to that relief, and one day before the statute of limitations would effectually bar her suit, and Vice-Chancellor Kindersley said: " But this court does constantly refuse its aid for making parties liable on a constructive trust when a less period than twenty years has elapsed, such as fifteen or seventeen years, and the plaintiff having stood by allowed the period to pass without bringing any complaint. Unless therefore there is something stated on the bill which prevents the operation of that principle, the court is bound to refuse its aid."

I think that the demurrer should be sustained upon this ground as well as upon the ground of multifariousness. I reach

this conclusion in contemplation of the fact that the complainant seeks to set aside that which is a voluntary settlement without a power of revocation. As to such an instrument, the authorities appear to hold that where the intent to make it irrevocable does not appear, and no motive for an irrevocable settlement is shown, the absence of the power of revocation is *prima facie* evidence of mistake. *Garnsey* v. *Mundy, 9 C. E. Gr. 243; S. C. with note, 13 Am. Law Reg. (N. S.) 345.*

Now, if the complainant can make a *prima facie* case by the mere production of the trust-deed, she should certainly, in equity, be denied the relief she asks, unless she can satisfactorily explain why she suffered those who might have been able to rebut her case to die before she commenced her suit. The very strength which the course of judicial decision has given to her case intensifies the seriousness of her laches. Even if the deeds were not *prima facie* evidence of mistake, and the burden was upon her to show the mistake and fraud that she claims, in view of the death of so many witnesses during her delay, I would feel constrained to allow the demurrer, and it is conspicuous, for much stronger reasons, that it should be sustained if she has not this burden.

This conclusion will not finally dispose of the complainant's case. If the laches can be explained, the bill may be amended.

Before leaving the case, it appears to be fitting that I should refer to the form of demurrer before me. The complainant's counsel in his brief elaborately discusses every equitable phase of the case made by the bill, because of the general demurrer for want of equity, going over much unnecessary ground. The two hundred and twenty-fifth rule requires that every demurrer, whether general or special, shall state the particular grounds upon which it rests. This rule has been construed in the late case of the *Essex Paper Co.* v. *Greacen, 18 Stew. Eq. 504,* where it is held that the design of the rule is to secure greater fairness and clearness in discussing questions arising on general demurrer than could be had under the old practice, and that the simple statement that a bill lacks equity will not be sufficient if the defect in the bill is obscure, or latent to such an extent that

the court, on inspecting the bill, cannot readily discern it. I will not say that the laches exhibited by this bill is not readily discernible, but I am most decidedly of the opinion that within the letter and spirit of the rule it was the duty of the demurrant to indicate that it was because of laches that he demurred. Not only should specification be made where the defect in the bill is obscure, but also even where it is plain, if it is collateral to the main case made by the bill, as it is in this instance.

However, as no objection has been made to the form of the present demurrer, and the first and third questions raised by it have been decided in favor of the demurrant, the demurrer will be sustained.