Four bonds and mortgages were executed by Edward Meyer to Maria Dietzsch and Albin Dietzsch, husband and wife, two of which mortgages covered 209-211 40th Street in Union City and the other two covered 132-134 40th Street in said city. The interests of the husband and wife in the bonds and mortgages were as tenants in common. Flemming v. Iuliano, 92 N.J. Eq. 685; Central TrustCo. v. Street, 95 N.J. Eq. 278; Franklin National Bank v.Freile, 116 N.J. Eq. 278, 283; affirmed, 117 N.J. Eq. 405. By mesne conveyances from Meyer, title to the two mortgaged premises became vested in Senior Investment Co. and that corporation by deed dated September 25th, 1936, recorded October 2d 1936, conveyed both mortgaged premises to Albin Dietzsch and Maria Dietzsch, husband and wife, expressly subject to the aforesaid mortgages. Thus Albin Dietzsch and Maria Dietzsch acquired title as tenants by the entirety to the properties on which they had held mortgages as tenants in common.
Maria Dietzsch died June 23d 1943, whereupon her surviving husband became the owner in fee of the mortgaged premises. She left a will whereby she appointed her husband executor and gave him the income of her estate for his life, with remainder to her two children. *Page 576 
Albin Dietzsch qualified as executor and died February 20th, 1944, whereupon on March 25th, 1944, complainant, William F. Gimbel, a son of Maria Dietzsch (by her first marriage), was appointed substituted administrator with the will annexed of Maria Dietzsch. Albin Dietzsch left a will by which he bequeathed and devised his estate to his brother Max Dietzsch and letters testamentary were granted to Otto Venino the executor named in his will.
The aforementioned mortgages were never canceled of record and William F. Gimbel as substituted administrator of Maria Dietzsch filed his bill in this cause June 12th, 1944, naming Otto Venino executor of Albin Dietzsch, and Max Dietzsch and his wife as defendants, wherein the complainant charges in his first cause of action that the mortgages given to Maria and Albin Dietzsch did not merge in the fee of the mortgaged premises conveyed to them by the Senior Investment Co. and he prays a decree that said mortgages are valid liens on the property described therein, and that an account be taken to determine the extent of his interest therein. By other causes of action the complainant seeks foreclosure of the mortgages and payment to the estate of Maria Dietzsch of her interest in the mortgages.
Merger is largely a question of intention and stated generally the law is that when a mortgagee acquires the equity of redemption, the presumption is that he intends to extinguish his mortgage interest by merging it in the estate in fee. The presumption is rebuttable and will not prevail when it is clear that a merger was not intended, which intention may be expressly declared, or may appear from the particular equities of the case.Clos v. Boppe, 23 N.J. Eq. 270; Tennenberger v. Sozio,101 N.J. Eq. 64.
The pertinent facts to be considered in reaching a conclusion as to whether the mortgages in the instant case merged in the conveyance to the mortgagees, are meager. I find no expressly declared intention that there should not be a merger. Albin Dietzsch and wife gave complainant written authority to act for them in collecting the amount of principal and interest on the mortgages, then long past due, and complainant took the bonds and mortgages to an attorney and instructed *Page 577 
him to foreclose. The attorney suggested that a deed from the owner of the properties might be obtained in lieu of foreclosure, whereupon complainant instructed the attorney to secure a deed and stated that he desired the mortgages held open for the protection of the mortgagees as against any other liens that might appear. The deed from Senior Investment Co. was obtained and after the attorney had recorded it he mailed it to complainant with the bonds and mortgages and a title search (which disclosed no liens of record against the conveyed properties other than the mortgages here in question). Accompanying those documents was a letter from the attorney to complainant wherein the attorney stated that he had not canceled the mortgages of record but had placed a form of receipt on the back of them and if complainant wanted them canceled, he should have Mr. and Mrs. Dietzsch sign the form and attend to the cancellation. The attorney added that he saw no reason for cancellation until the parties were ready for sale. Contemporaneous with the receipt of the deed from Senior Investment Co., the complainant had Mr. and Mrs. Dietzsch execute an agreement running to Edward Meyer, the obligor on the bonds in question and to those who had succeeded him in title, not to sue them for any deficiency that might ensue as the result of foreclosure of the mortgages.
The bonds and mortgages were kept in a tin box belonging to the husband and wife and after the death of Maria Dietzsch her husband took them to his attorney, Mr. Venino, who has ever since had them in his possession and who as executor of Albin Dietzsch, asserts no claim by virtue thereof on behalf of the estate of his testator. No inventory of the personal estate of Maria Dietzsch was filed but in the return made by Albin Dietzsch executor to the state taxing authorities for the purpose of inheritance taxes, no mention was made of the mortgages as assets of the estate of Maria Dietzsch, which indicates that it was not Mr. Dietzsch's understanding that the mortgages were of any legal value. Prior to delivery of the deed from Senior Investment Co. to the mortgagees, policies of insurance against fire on the buildings on the mortgaged premises had contained a mortgagee clause and as those *Page 578 
policies were thereafter renewed they ran in favor of the mortgagees as owners.
There is no proof as to the intention of the mortgagees themselves with regard to their mortgages at or after the conveyance to them of the mortgaged premises. It seems unreasonable to assume that they did not intend to accept title to the mortgaged properties in substitution for and in full satisfaction of their mortgage status, but (merely because they permitted the mortgages to remain uncanceled) intended that the mortgages should continue as valid and enforceable liens so that on the death of one, his or her legal representative might enforce the mortgages as against the survivor. They had appointed complainant their agent with full authority to act for them. When he determined to accept the conveyance his sole purpose for not cancelling the mortgages of record, according to his testimony, was to protect the mortgagees against unknown claims which might be asserted by others. He does not say that the mortgages were to be held uncanceled for the purpose of enabling the mortgagees to assert rights as between themselves. If it was the intention of complainant or the mortgagees to continue the same rights in the mortgaged properties that the mortgagees had by virtue of the mortgages, complainant would have directed title to the properties to be taken in the names of husband and wife as tenants in common, but he caused title to be taken as tenants by the entirety, presumably because the mortgagees understood the effect of such a title and had decided to abandon their mortgage interests and accept instead an ownership which eventually would be absolute in the one who survived the other. This appears to be the ordinary case of a mortgagee who instead of attempting to liquidate his debt by foreclosure, decided to avoid the delay and expense of legal proceedings by taking over the mortgaged property by voluntary conveyance from the owner and to thus substitute the property for his mortgage. The letter from the attorney to the complainant shows that the attorney understood that the mortgagees would eventually discharge the mortgages of record but out of abundant caution the attorney advised that such action be withheld for the then present. I conclude *Page 579 
that the mortgage interest held by the husband and wife as tenants in common, merged in the larger estate in fee conveyed to them and that the mortgages are no longer subsisting liens on the mortgaged premises, title to which is now vested in the defendant Max Dietzsch. Clos v. Boppe, supra; Tennenberger v. Sozio,supra; Harris v. Calverly, 119 N.J. Eq. 120; In re Selous, 1Ch. 921 (1901).
Complainant further alleges in his causes of action that Maria Dietzsch advanced from her own funds the consideration for the conveyance from Senior Investment Co., also money to pay taxes in arrear on the conveyed properties and also the amount of fees of the attorney who procured said conveyance, and complainant seeks a decree adjudging that the moneys so advanced were for the protection of the mortgages and that an equitable lien (presumably against the properties) be established therefor.
There is no evidence as to payment of attorney's fees, or by whom such payment may have been made but the proofs show that complainant by his personal check dated September 25th, 1936, for $225, paid the consideration for the deed and by his personal check dated October 27th, 1936, for $3,384.33 paid tax arrears due the City of Union City. His counsel offered to prove that both payments were made out of funds given complainant by Maria Dietzsch but his offer was rejected on the ground that complainant was barred by R.S. 2:97-2 from testifying as to any transactions with his testatrix. That ruling was erroneous and I shall assume it to be an established fact that the money complainant paid out was advanced to him by Maria Dietzsch or that she reimbursed him therefor, but testimony by complainant as to what she may have said to him with respect to such payments would be hearsay and therefore inadmissible. Further, complainant's testimony as to statements which Albin Dietzsch may have made with respect to said payments would be barred by the statute R.S. 2:97-2.
In the ordinary case of a claim for debt the statute of limitation operates on the presumption, after the lapse of six years, that the alleged debt never had legal existence, or has been discharged and has ceased to exist. There is no *Page 580 
proof that Maria Dietzsch when she made the payments or at any time thereafter up to her death, asserted claim against her husband for a share of the money paid by her for the benefit of the tenancy by the entirety acquired at the time of such payments. Death of both husband and wife, the persons who knew the circumstances and conditions under which the payments were made, has deprived us of knowledge of what the true situation was as between them. All that appears from the evidence is that the payments were made voluntarily by Maria Dietzsch without any agreement on the part of her husband to contribute part thereof and in such situation the alleged debt had no legal existence because her payments would be presumed to be absolute gifts by her to her husband with whom she was then living and to whom she had been married about thirty-six years. Black v. Black,30 N.J. Eq. 215; reversed on other grounds, 31 N.J. Eq. 798;Young v. Young, 45 N.J. Eq. 27-37; Selover v. Selover,62 N.J. Eq. 761; Ringold v. Ringold, 93 N.J. Eq. 357; Luebbers v.Luebbers, 97 N.J. Eq. 172; Nixon v. Nixon, 100 N.J. Eq. 437;Mendelsohn v. Mendelsohn, 106 N.J. Eq. 537.
Nevertheless the complainant asks me to assume that in making the payments Maria Dietzsch intended that her husband should be liable to her for a share thereof, also that the husband, at the time or during the more than six years which elapsed between the payments and his wife's death, failed to satisfy such liability, or that the wife did not recoup therefor out of rent or from some other source. Such assumptions are not supported by any proof and are not of such certainty as to enable me to determine that they follow from the mere fact of the payments having been made by Maria Dietzsch. It being impossible now to ascertain what the true situation was, I think the failure of Maria Dietzsch in her lifetime to assert liability on the part of her husband and to attempt to enforce contribution from him (if he had not contributed) makes it necessary to hold that the statute of limitation, although by its terms referable to actions at law and held not applicable in actions in equity between husband and wife, should be applied by analogy in this case in the form of the equitable doctrine of laches on the part of Maria Dietzsch such as will bar the recovery sought by complainant as her *Page 581 
legal representative. Gray v. Gray, 39 N.J. Eq. 511; Sebring
v. Sebring, 43 N.J. Eq. 59; Van Houten v. Van Winkle, 46 N.J. Eq. 380; Ten Broeck v. Jackson, 71 N.J. Eq. 582; affirmed on other grounds, 73 N.J. Eq. 734; Mealey v. Howard, 79 N.J. Eq. 93; affirmed, Ibid. 224; Givernaud v. Givernaud, 81 N.J. Eq. 66; Bennett v. Piatt, 85 N.J. Eq. 436; affirmed, Ibid. 602.
I conclude that complainant's prayer for a decree that a lien be adjudged in his favor against the properties on account of which the payments in question were made, should be denied.