**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2620-21

CATIC TITLE INSURANCE
COMPANY f/k/a NEW JERSEY
TITLE INSURANCE COMPANY,

     Plaintiff-Respondent,

v.

FRANK J. COZZARELLI,

     Defendant-Appellant,

and

CHAMPION MORTGAGE,

     Defendant-Respondent,

and

WELLS FARGO BANK, N.A.,

     Defendant,

and

RICHARD CECERE and
ROSEMARIE CECERE,

Defendants/Third-Party
Plaintiffs-Respondents,

v.

WELLS FARGO BANK, N.A.,
and MARGARET HARKNESS,

Third-Party Defendants-
Respondents,

and

SECRETARY OF HOUSING AND
URBAN DEVELOPMENT (HUD),

Third-Party Defendant.

_____

Submitted October 24, 2023 – Decided March 7, 2024

Before Judges Gooden Brown and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000212-17.

Frank J. Cozzarelli, appellant pro se.

Schenck Price Smith & King LLP, attorneys for respondent CATIC Title Insurance Company (Mark Silver and Jonathan F. Donath, of counsel and on the brief).

Reed Smith LLP, attorneys for respondent Wells Fargo Bank, N.A., and Margaret Harkness (Aaron M. Bender, of counsel and on the brief).

A-2620-21

Richard Cecere and Rosemarie Cecere, respondents pro se.

PER CURIAM

In this mortgage lien priority dispute, defendant Frank Cozzarelli appeals from the December 8, 2021, Chancery Division order granting summary judgment to plaintiff CATIC Title Insurance Company (CATIC), formerly known as New Jersey Title Insurance Company,[1] and denying Cozzarelli's motion to dismiss CATIC's declaratory judgment complaint seeking a declaration that Cozzarelli's mortgage was subordinate to the mortgage of its insured, defendant Wells Fargo Bank, N.A. (Wells Fargo). Cozzarelli also appeals from the February 18, 2022, order denying reconsideration. We affirm substantially for the reasons articulated in Judge James R. Paganelli's well-reasoned opinions.

I.

We glean these facts from the record. Since 1999, defendant Rosemarie Cecere had owned in fee simple the marital residential property at issue in this

---

[1] For ease of reference, we use CATIC throughout the opinion notwithstanding the fact that it may have been known as New Jersey Title Insurance Company at the time of the underlying event.

A-2620-21

appeal.  On April 7, 2009, Rosemarie[2] deeded the property to her husband, defendant Richard Cecere, so that he could secure a reverse mortgage from Wells Fargo.  Cozzarelli, who was then a practicing attorney,[3] prepared the April 7, 2009, deed.

Because of her age, Rosemarie did not meet the minimum age requirement to qualify for a reverse mortgage herself.  According to the Ceceres' certifications and deposition testimony, Margaret Harkness, a loan officer for Wells Fargo, had advised them about the age disqualification and had explained to them that Richard could deed the property back to his wife and himself after the closing.

The reverse mortgage ownership interest certification signed by the Ceceres and Harkness stated:

> If you have an ownership interest in the . . . property, but will not be a borrower under the proposed reverse mortgage, you need to be aware of the following:
>
> The Lender does not recommend or require any changes to the ownership of

---

[2] Because of the common surname, we use first names to avoid confusion and intend no disrespect.

[3] In In re Cozzarelli, our Supreme Court accepted the Disciplinary Review Board's recommendation to disbar Cozzarelli "based on the proof of knowing misappropriation of client and escrow funds."  225 N.J. 16, 18 (2016).

real property as a condition to making a reverse mortgage loan. However, the reverse mortgage program has certain restrictions that prevent some property owners from being eligible borrowers. These restrictions also prohibit an individual from holding an ownership interest in property if they are not an eligible borrower.

As a result of these restrictions, any non-eligible owners will be required to relinquish their ownership interest in the property. By relinquishing your ownership interest, you are affecting your legal rights. The Lender strongly suggests that you consult with your financial and/or legal advisor(s) to determine if this reverse loan is in your best interest.

If you continue to reside in the property after divestiture and the borrower predeceases you or no longer occupies the property as their primary residence, the reverse mortgage will become due and payable. Typically, the borrower's estates must pay off the reverse mortgage through the proceeds of the sale of the property or through a refinance into a new mortgage.

I hereby certify that I have received and read this disclosure. I understand and agree that the Lender has made no representations regarding my legal rights, but has strongly suggested that I seek legal advice before signing this or any other document associated with the reverse mortgage loan.

On April 24, 2009, Wells Fargo and Richard executed a "Home Equity Conversion Loan Agreement," whereby Wells Fargo provided a reverse mortgage loan to Richard secured by a mortgage on the property for the sum of $938,250. At his deposition, Cozzarelli confirmed that although he did not provide legal advice in connection with the April 24, 2009, closing, he attended and notarized several documents.

On May 4, 2009, the deed transferring the property to Richard and the reverse mortgage were recorded with the Essex County Register's Office. On the same day, Buyer Defender Inc. issued a title insurance policy to Wells Fargo for CATIC. Richard is the sole shareholder of Buyer Defender, Inc., a title insurance agent retained by CATIC. The policy listed Wells Fargo as the insured mortgagee on the reverse mortgage.

On July 7, 2009, by deed, Richard conveyed title to the property to himself and Rosemarie, as husband and wife. Cozzarelli prepared the deed, which was filed with the Essex County Register's Office on July 13, 2009. Over four years later, on November 20, 2013, Cozzarelli Law LLP, a partnership controlled by Cozzarelli, provided a loan for $525,000 to Rosemarie. The loan was secured by a mortgage on the property (the 2013 mortgage). The 2013 mortgage, which was prepared by Cozzarelli, was recorded in July 2014. In his deposition,

Cozzarelli testified that, in part, the mortgage was intended to secure the mounting legal debts and expenses Richard had incurred litigating various issues related to his many businesses.

On September 7, 2016, Wells Fargo filed a four-count foreclosure complaint, naming, among others, the Ceceres and Cozzarelli Law LLP as defendants. In the complaint, Wells Fargo alleged that Richard was in default of his obligations under the reverse mortgage as of March 14, 2016. Therefore, Wells Fargo sought to sell the property to satisfy the debt. Among other things, Wells Fargo also "requested that the mortgage documents be reformed . . . to designate [Rosemarie] as a mortgagor and subject her interest . . . to the rights of [Wells Fargo]."

On November 3, 2016, Cozzarelli, as assignee of Cozzarelli Law LLP, filed a contesting answer asserting a first priority mortgage lien on the property by virtue of the 2013 mortgage. Among other things, Cozzarelli alleged that his interest was granted by Rosemarie, alone, whose interest in the property was "superior to and not subordinate to" Wells Fargo's 2009 reverse mortgage "by operation of the [April 7, 2009] deed" or by virtue of her interest "as tenant by the entirety with Richard." Moreover, according to the answer, Wells Fargo "did not condition the issuance of credit to Richard . . . on securing any mortgage

or lien on the right, title and interest in and to the property of Rosemarie." In mid-2017, Wells Fargo's foreclosure complaint was dismissed without prejudice.

On April 25, 2017, Wells Fargo filed a notice of claim under the title insurance policy issued by CATIC in connection with Rosemarie's failure to sign the reverse mortgage and Cozzarelli's asserted priority over the reverse mortgage on Rosemarie's interest in the property. On September 20, 2017, CATIC filed a declaratory judgment complaint seeking a declaration that Cozzarelli's 2013 mortgage was subordinate to Wells Fargo's reverse mortgage. Among others, the complaint named Richard, Rosemarie, Cozzarelli, and Wells Fargo as defendants. Cozzarelli filed a contesting answer with affirmative defenses as well as counterclaims against CATIC and crossclaims against CATIC and Wells Fargo. The Ceceres also filed a contesting answer with counterclaims and crossclaims as well as a third-party complaint naming Wells Fargo, Harkness, and others as third-party defendants.[4]

In 2019, CATIC moved for summary judgment, and Cozzarelli cross-moved to dismiss CATIC's complaint. Following oral argument, on December

---

[4] Wells Fargo was subsequently dismissed from the declaratory judgment complaint by consent order. The reverse mortgage was transferred several times, and eventually assigned to Champion Mortgage.

A-2620-21

16, 2019, Judge Paganelli issued an order and written statement of reasons denying the motions without prejudice. In his decision, although the judge found "disputed material issues of fact regarding the creation of the [r]everse [m]ortgage" to withstand summary judgment, he found there was "a justiciable issue" to justify proceeding as a declaratory judgment action based on Wells Fargo's assertion of a claim for coverage against CATIC under the title insurance policy. He also determined that CATIC "ha[d] standing to prosecute the[] issues" because CATIC's "policy of insurance [was] implicated" by Wells Fargo's claim as well as Cozzarelli's and the Ceceres' "defenses."

In October 2021, CATIC again moved for summary judgment. Wells Fargo and Harkness also filed separate motions for summary judgment in connection with the Ceceres' third-party complaint. About a month later, Cozzarelli and the Ceceres filed a joint motion to dismiss CATIC's declaratory judgment complaint. Following oral argument, Judge Paganelli issued separate orders on December 8, 2021, granting CATIC, Wells Fargo, and Harkness summary judgment, and denying Cozzarelli's and the Ceceres' joint motion to dismiss CATIC's complaint. In a combined statement of reasons accompanying the orders, the judge initially referenced and adopted his December 16, 2019,

A-2620-21

decision that the matter "would proceed as a declaratory judgment action" since an action to quiet title, see R. 4:62-1, "was inapplicable."

Addressing the applicable statute of limitations, the judge rejected Cozzarelli's and the Ceceres' contention that the action was barred by the six-year statute of limitations for contractual claims embodied in N.J.S.A. 2A:14-1. Instead, the judge concluded that the twenty-year statute of limitations for real estate actions codified in N.J.S.A. 2A:14-7 applied. Judge Paganelli reasoned,

> A mortgage is defined as . . . "an estate created by a conveyance absolute in its form, but intended to secure the performance of some act, such as the payment of money, and the like, by the grantor or some other person, and to become void if the act is performed agreeably to the terms prescribed at the time of making such conveyance." Black's Law Dictionary [(4th rev. ed. 1968) (defining "mortgage")].
>
> Therefore, a cause of action, regarding the priorities of mortgages effecting the real estate, would be governed by N.J.S.A. 2A:14-7.

The judge continued,

> Moreover, the purpose of [a] reverse mortgage is to "meet the special needs of elderly homeowners by reducing the effect of the economic hardship caused by the increasing costs of meeting health, housing and subsistence needs at a time of reduced income, through the insurance of home equity conversion mortgages to permit the conversion of a portion of accumulated home equity into liquid assets.["] 12 [U.S.C.] § 1715z-20(a)(1)[.]

10

Further, the federal statute defines "mortgage" to mean " a first mortgage or first lien on real estate." 12 [U.S.C.] § 1715z-20(b)(4).

Therefore, similarly, under the federal statutes, this matter, involving priority between the Wells Fargo reverse mortgage and the Cozzarelli mortgage would be an action at law for real estate.

The judge also determined that the Ceceres' and Cozzarelli's reliance on laches to bar CATIC's cause of action was misplaced. According to the judge, CATIC's complaint was filed a mere five months after the title insurance company was provided notice of a priority claim on April 25, 2017. Moreover, there was no evidence that the Ceceres or Cozzarelli gave Wells Fargo any prior notice of the Cozzarelli mortgage despite their awareness of the existence of the reverse mortgage. Therefore, the judge found no "inexcusable or unexplained delay."

Further, the judge rejected the Ceceres' and Cozzarelli's claim that the transactions were violative of N.J.S.A. 46:3-17.4 and N.J.S.A. 3B:28-3. After analyzing the statutes, the judge pointed out that when Rosemarie deeded the property to Richard as the sole owner, Rosemarie retained a statutory joint possession interest in the property under N.J.S.A. 3B:28-3(a). According to the judge, after Richard obtained the reverse mortgage and then, with Rosemarie's

consent, conveyed the property to him and Rosemarie as tenants by the entirety pursuant to N.J.S.A. 46:3-17.2(a), Rosemarie's lesser estate as a joint possessory interest merged into her greater interest in the tenancy by entirety, which was encumbered by the reverse mortgage.

The judge concluded:

> Thus, based solely on [the Ceceres' and Cozzarelli's] description of . . . Harkness' representations, she did not make any misrepresentation. Moreover, [the Ceceres' and Cozzarelli's] attempt to expand . . . Harkness' representations to include that Rosemarie could take title without being subject to the reverse mortgage is not factually supported by any evidence and is contradicted by Richard's and Rosemarie's testimony as to their understandings. Moreover, the transactions are not violative of the applicable statutes, N.J.S.A. 46:3-17.4 or N.J.S.A. 3B:28-3.

Thereafter, Cozzarelli moved for reconsideration and other relief. Following oral argument, Judge Paganelli entered an order on February 18, 2022, denying the motion for reconsideration and certifying the December 8, 2021, summary judgment orders as final. In a supporting oral opinion placed on the record the same day, the judge determined Cozzarelli failed to meet the standard for reconsideration of the prior orders. This appeal followed.

On appeal, Cozzarelli raises the following points for our consideration:

12

POINT I

ON APPEAL, THE STANDARD OF REVIEW IS DE NOVO IN THIS CASE.

POINT II

THE TRIAL [JUDGE] ERRED BY NOT APPLYING THE SIX[-]YEAR STATUTE OF LIMITATIONS TO [CATIC'S] SUIT.

POINT III

THE TRIAL [JUDGE] ERRED BY ALLOWING [CATIC] TO PURSUE A DECLARATORY JUDGMENT ACTION TO QUIET TITLE WHERE PRIORITY ISSUES WERE MORE APPROPRIATELY DISPOSED OF IN THE DISMISSED FORECLOSURE ACTION. SUCH PROCEDURAL ANOMALY IS AN ABUSE OF THE DECLARATORY JUDGMENT ACT.

A. An Action To Quiet Title Does Not Lie Under The Present Facts And Couching The Case As A Declaratory Judgment Action Does Not Cure The Failure To State A Cause Of Action.

B. [CATIC's] Declaratory Judgment Action Is Flawed Because Not All Interested Parties Have Been Joined.

C. [CATIC's] Action To Quiet Title Amounts To Forum Shopping Which Is Disfavored Under New Jersey Public Policy.

D.  Dismissal Of The Foreclosure Case To File A Declaratory Judgment Case Was Inappropriate.

POINT IV

[CATIC'S] SUIT IS BARRED BY THE DOCTRINE OF LACHES.

POINT V

THE APPROPRIATE BURDEN OF PROOF WAS NOT APPLIED TO [CATIC'S] CAUSE OF ACTION BY THE TRIAL [JUDGE], AND THEREFORE THE JUDGMENTS ENTERED SHOULD BE REVERSED.

POINT VI

N.J.S.A. 46:3-17.4 PRECLUDES THE RELIEF SOUGHT BY [CATIC].[5]

II.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court."  Templo Fuente De Vida Corp. v. Nat'l

---

[5]  The Ceceres filed a brief challenging the judge's decisions but did not file a cross-appeal.  The Ceceres argue that CATIC had no standing to bring the declaratory judgment action.  However, without cross-appealing, a party may argue points the trial court either rejected or did not address, so long as those arguments are in support of the trial court's order.  See Lippman v. Ethicon, Inc., 432 N.J. Super. 378, 381 n.1 (App. Div. 2013) ("As respondents, defendants can raise alternative arguments in support of the trial court's judgment without filing a cross-appeal."); Chimes v. Oritani Motor Hotel, Inc., 195 N.J. Super. 435, 443 (App. Div. 1984) ("[W]ithout having filed a cross-appeal, a respondent can argue any point on the appeal to sustain the trial court's judgment.").

A-2620-21

Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.
>
> [Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016) (citations omitted) (quoting R. 4:46-2(c)).]

Whether a genuine issue of material fact exists depends on "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). "We review issues of law de novo and

accord no deference to the trial judge's [legal] conclusions . . . ." MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 312 (App. Div. 2018).

On the other hand, we review a trial court's decision on a motion for reconsideration under an abuse of discretion standard, Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996), and will not disturb a trial court's reconsideration decision "unless it represents a clear abuse of discretion." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)). That said, reconsideration is granted "only under very narrow circumstances" and is only available when "'either ([1]) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.'" Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria,

242 N.J. Super. 392, 401 (Ch. Div. 1990)); accord Cummings, 295 N.J. Super. at 384.

Statutory interpretation involves questions of law that are well suited for resolution on a summary judgment motion. McGovern v. Rutgers, 211 N.J. 94, 107-08 (2012). The parameters of a spouse's statutory interest in marital real property are at the heart of this appeal. In that regard, the New Jersey Joint Possession Statute (JPS), N.J.S.A. 3B:28-3 to -3.1, provides protection to a non-titled spouse. Under N.J.S.A. 3B:28-3, a non-titled spouse enjoys a possessory interest in marital real property as follows:

> a. During life every married individual shall be entitled to joint possession with his [or her] spouse of any real property which they occupy jointly as their principal matrimonial residence and to which neither dower nor curtesy applies. One who acquires an estate or interest in real property from an individual whose spouse is entitled to joint possession thereof does so subject to such right of possession, unless such right of possession has been released, extinguished or subordinated by such spouse or has been terminated by order or judgment of a court of competent jurisdiction or otherwise.
>
> b. Nothing contained herein shall be construed to prevent the release, subordination or extinguishment of the right of joint possession by either spouse, by premarital agreement, separation agreement or other written instrument.

17

> c. The right of joint possession shall be
> extinguished by the consent of both parties, by the
> death of either spouse, by judgment of divorce,
> separation or annulment, by other order or judgment
> which extinguishes same, or by voluntary abandonment
> of the principal matrimonial residence.

> [N.J.S.A. 3B:28-3.]

N.J.S.A. 3B:28-3.1 delineates the circumstances in which the matrimonial residence will be subject to an encumbrance, despite the spouse's marital possessory interest in the property, as follows:

> The right of joint possession to the principal
> matrimonial residence as provided in [N.J.S.A. ]3B:28-
> 3 is subject to the lien of a mortgage, irrespective of the
> date when the mortgage is recorded, provided:

> a. The mortgage is placed upon the matrimonial
> residence prior to the time that title to the residence was
> acquired by the married individual; or

> . . . .

> e. The right of joint possession has been
> subordinated, released or extinguished by subsection b.
> or c. of [N.J.S.A. ]3B:28-3.

> [N.J.S.A. 3B:28-3.1.]

"Acquisition of title to the property cancel[s] any right to joint possession." Reibman v. Myers, 451 N.J. Super. 32, 45 (App. Div. 2017). Thus, if a non-titled spouse becomes a titled owner, the spouse no longer enjoys the

protection of the JPS.  Ibid.  Such acquisition of title in fee simple may occur through a conveyance of property by deed or other instrument.  "A tenancy by the entirety is a form of joint property ownership available only to spouses that is created 'when property is held by a husband and wife with each becoming seized and possessed of the entire estate.'"  N.T.B. v. D.D.B., 442 N.J. Super. 205, 218 (App. Div. 2015) (quoting Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 389 N.J. Super. 219, 227 (Ch. Div. 2006)).

A tenancy by entirety by operation of deed or other instrument is created when one of the following occurs:

> a. A husband and wife together take title to an interest in real property or personal property under a written instrument designating both of their names as husband and wife; or
>
> . . . .
>
> c. An owner spouse conveys or transfers an interest in real property or personal property to the non-owner spouse and the owner spouse jointly under written instrument designating both of their names as husband and wife.
>
> Language which states "...... and ......, his wife" or ".......... and .........., her husband" shall be deemed to create a tenancy by the entirety.
>
> [N.J.S.A. 46:3-17.2.]

N.J.S.A. 46:3-17.4 specifies that "[n]either spouse may sever, alienate, or otherwise affect their interest in the tenancy by entirety during the marriage or upon separation without the written consent of both spouses."

A marital possessory interest pursuant to the JPS is a lesser estate than a fee ownership interest. "[W]henever a greater estate and a lesser estate coincide in the same person . . . the lesser estate merges into the greater . . . ." Anthony L. Petters Diner, Inc. v. Stellakis, 202 N.J. Super. 11, 19 (App. Div. 1985) (quoting Contos v. Lipsky, 433 So. 2d 1242, 1244 (Fla. Dist. Ct. App. 1983)). However, "[t]he presumption of merger is rebuttable and may always be overcome if the intention that there be no merger is 'expressly declared'" or "by 'indications of a contrary intention'" that "'may appear from the particular equities of the case.'" Id. at 18-19 (first quoting Gimbel v. Venino, 135 N.J. Eq. 574, 576 (Ch. 1944); then quoting Tennenberger v. Sozio, 101 N.J. Eq. 64, 65 (Ch. 1927); and then quoting Gimbel, 135 N.J. Eq. at 576).

The Declaratory Judgment Act (DJA), N.J.S.A. 2A:16-50 to -62, affords a statutory right to declaratory relief to attain clarity in legal relations.

> The remedial purpose of the [DJA] is "to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." N.J.S.A. 2A:16-51. "The Act merely broadens the rationale of remedies long cognizable in equity, such as

those 'to settle doubts about the construction of a will . . . ; or . . . to quiet title, or a bill of peace.'"

[Finkel v. Twp. Comm. of Hopewell, 434 N.J. Super. 303, 317 (App. Div. 2013) (quoting N.J. Tpk. Auth. v. Parsons, 3 N.J. 235, 239-40 (1949)).]

As such, N.J.S.A. 2A:16-52 provides:

All courts of record in this state shall, within their respective jurisdictions, have power to declare rights, status and other legal relations, whether or not further relief is or could be claimed; and no action or proceeding shall be open to objection on the ground that a declaratory judgment is demanded.

Although N.J.S.A. 2A:16-53 enumerates certain actions determinable under the DJA, including "any question of construction or validity arising under [an] instrument, statute, ordinance, contract or franchise," N.J.S.A. 2A:16-52 specifies that:

The enumeration in other sections of this article of the questions determinable and rights declarable in a proceeding brought under the provisions of this article does not limit or restrict the exercise of the general powers conferred by this section in a proceeding for declaratory relief, in which a judgment will terminate the controversy or remove an uncertainty.

To be sure, "[t]he Act's mandate is to afford relief from uncertainty with respect to a party's rights, including property rights." ML Plainsboro Ltd. P'ship v. Twp. of Plainsboro, 316 N.J. Super. 200, 204 (App. Div. 1998). Still, "[t]he

21

existence of another available remedy does not preclude a judgment for declaratory relief."  Vonins, Inc. v. Raff, 101 N.J. Super. 172, 177 (App. Div. 1968).  As such, "[a] court should liberally construe and administer the Act to accomplish this general purpose," ML Plainsboro Ltd. P'ship, 316 N.J. Super. at 204, and "[w]hether a court should grant declaratory relief is ordinarily a matter resting in judicial discretion."  Vonins, Inc., 101 N.J. Super. at 177.

Nonetheless, the remedy of a declaratory judgment

> is circumscribed by the salutary qualification that the jurisdiction of the courts may not be invoked in the absence of an actual controversy.  "Not only must the plaintiff prove his [or her] tangible interest in obtaining a judgment, but the action must be adversary in character, that is, there must be a controversy between the plaintiff and a defendant, subject to the court's jurisdiction, having an interest in opposing his [or her] claim."  [Edwin Borchard, Declaratory Judgments 29 (2d ed. 1941)]; cf. New Jersey Bankers Ass'n v. Van Riper, 1 N.J. 193 (1948).  We use the phrase "salutary qualification" because of the understandable policy of the courts to refrain from rendering advisory opinions, from deciding moot cases, or generally from functioning in the abstract, and "to decide only concrete contested issues conclusively affecting adversary parties in interest," [Borchard, at 34-35].
>
> [Parsons, 3 N.J. at 240.]

Stated differently, "[i]t is essential for relief under the [DJA] that there be a finding of both justiciability and standing."  Camarco v. Orange, 111 N.J.

Super. 400, 402 (Law Div. 1970), aff'd, 116 N.J. Super. 531 (App. Div. 1971). See Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941) ("[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."). A justiciable controversy undoubtedly exists where a court is asked to determine an insurer's liability.

"[S]tanding is an element of justiciability that cannot be waived or conferred by consent." In re Adoption of Baby T, 160 N.J. 332, 341 (1999). "Rather, it is a threshold inquiry because '[a] lack of standing by a plaintiff precludes a court from entertaining any of the substantive issues for determination.'" EnviroFinance Grp., LLC v. Env't Barrier Co., 440 N.J. Super. 325, 339 (App. Div. 2015) (alteration in original) (quoting In re Adoption of Baby T, 160 N.J. at 340).

To have standing, "a party must present a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and a substantial likelihood that the party will suffer harm in the event of an unfavorable decision." In re Camden Cnty., 170 N.J. 439, 449 (2002). "Generally, the threshold to prove a party's standing is 'fairly low,'"

EnviroFinance Grp., LLC, 440 N.J. Super. at 340 (quoting Reaves v. Egg Harbor Twp., 277 N.J. Super. 360, 366 (Ch. Div. 1994)), and "[a] financial interest in the outcome ordinarily is sufficient to confer standing." Strulowitz v. Provident Life & Cas. Ins. Co., 357 N.J. Super. 454, 459 (App. Div. 2003) (citing In re Camden Cnty., 170 N.J. at 448).

The DJA "does not contain a statute of limitations." Ballantyne House Assocs. v. City of Newark, 269 N.J. Super. 322, 330 (App. Div. 1993). However, the applicable limitation period is determined by the nature of the underlying action. See id. at 330-31. As such, the period of limitation for a real estate action is governed by N.J.S.A. 2A:14-7, which provides that "[e]very action at law for real estate shall be commenced within [twenty] years next after the right or title thereto, or cause of such action shall have accrued." On the other hand, the limitations period for a contractual claim is governed by N.J.S.A. 2A:14-1(a), which provides that any action "for recovery upon a contractual claim or liability . . . shall be commenced within six years next after the cause of any such action shall have accrued."

"[C]auses of action brought at law are governed in the first instance by statutes of limitations that have been fixed by the Legislature to create defined and regularly applicable periods against which to determine timeliness. Laches,

on the other hand, remains an equitable doctrine, utilized to achieve fairness." Fox v. Millman, 210 N.J. 401, 422 (2012). "The time constraints for the application of laches 'are not fixed but are characteristically flexible.'" Knorr v. Smeal, 178 N.J. 169, 181 (2003) (quoting Lavin v. Bd. of Educ., 90 N.J. 145, 151 (1982)). Laches bars "the prosecution of an equitable claim if the suitor has inexplicably, inexcusably and unreasonably delayed pursuing a claim to the prejudice of another party." In re Est. of Thomas, 431 N.J. Super. 22, 30 (App. Div. 2013) (citing Knorr, 178 N.J. at 180-81). "[W]e often look for an analogous statute of limitations to determine whether there has been an inexcusable delay." Ibid.

For laches to be enforced, the delaying party must have had "sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith believing that the right had been abandoned." Knorr, 178 N.J. at 181. "The key factors to be considered in deciding whether to apply the doctrine are the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay.'" Ibid. (quoting Lavin, 90 N.J. at 152). "[W]hether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court."

Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2012) (quoting Garrett v. Gen. Motors Corp., 844 F.2d 559, 562 (8th Cir. 1988)).

III.

Applying these principles, we reject Cozzarelli's contentions and affirm substantially for the reasons stated by Judge Paganelli in his December 8, 2021, and February 18, 2022, decisions. We agree with the judge that Rosemarie retained a possessory interest in the property under the JPS when she deeded the property to Richard as the sole owner. However, the right of joint possession may be extinguished pursuant to a "written instrument." N.J.S.A. 3B:28-3(b). When Richard conveyed the property by deed to himself and Rosemarie as tenants by the entirety, Rosemarie's possessory interest merged into her greater fee ownership interest. There was no declared or implied intention merger would not occur. On the contrary, it is undisputed that Rosemarie was aware of the circumstances and wanted to be on the deed to regain title to the property. With the deed transfer giving Rosemarie title to the property in fee simple and extinguishing Rosemarie's right of joint possession, the property became subject to the reverse mortgage lien placed on the property prior to the transfer. Contrary to Cozzarelli's assertion, Rosemarie had no unencumbered individual interest to which his 2013 mortgage attached.

Further, we discern no abuse of discretion in the judge's decision to proceed as a declaratory judgment action, rather than a quiet title action.[6] The declaration of the priority of the mortgage liens presented a justiciable controversy in determining CATIC's liability under the title insurance policy, and CATIC clearly had standing as the insurer. Contrary to Cozzarelli's claim, the existence of alternative remedies, such as a foreclosure action, does not bar a declaratory judgment action. Equally unavailing is Cozzarelli's contention that the declaratory judgment action was improperly decided because CATIC failed to join all the interested parties named in the now-dismissed foreclosure action.

Under the DJA, "[w]hen declaratory relief is sought, all persons having or claiming any interest which would be affected by the declaration shall be made parties to the proceeding." N.J.S.A. 2A:16-56. Because CATIC sought to ascertain lien priority between its insured's reverse mortgage and Cozzarelli's

---

[6] We agree with the judge that a quiet title action was not sustainable because CATIC had neither title nor possession of the property, prerequisites for such an action. See N.J.S.A. 2A:62-1; R. 4:62-1. As the judge ruled in denying Cozzarelli's motion for reconsideration, Cozzarelli's contention that CATIC's claim was actually an action in quia timet was equally untenable. See Phoenix Pinelands Corp. v. Davidoff, 467 N.J. Super. 532, 614-15 (App. Div. 2021) (explaining that "[a] quia timet proceeding is broader in scope than a statutory quiet title action because possession . . . 'is not an essential'" but "the claimant . . . 'must show a title to the relief free from all reasonable doubt'" (first quoting Est. of Gilbert Smith v. Cohen, 123 N.J. Eq. 419, 424 (E. & A. 1938); and then quoting Shotwell v. Shotwell, 24 N.J. Eq. 378, 387 (Ch. 1874))).

2013 mortgage, the named defendants in the now-dismissed foreclosure action were not germane to the declaratory judgment action because the resolution of priority between Wells Fargo's reverse mortgage and Cozzarelli's 2013 mortgage would not affect the rights of other junior lien holders.

We also agree that the action was governed by the twenty-year statute of limitations for real estate actions, pursuant to N.J.S.A. 2A:14-7, rather than the six-year limitations period for contractual claims under N.J.S.A. 2A:14-1(a), because the underlying action related to the priority of mortgage liens attached to real estate. Although both the title insurance policy and the reverse mortgage are contracts, as Cozzarelli points out, the underlying dispute relates to the priority of liens attached to the property. Additionally, we reject Cozzarelli's contention that the action was barred by laches because CATIC did not delay in seeking relief.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

28

A-2620-21